IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:14-cv-24517-KMM

EDGE SYSTEMS LLC, a California
limited liability company, and AXIA
MEDSCIENCES, LLC, a Delaware limited
liability company

    Plaintiffs,

v.

RAFAEL NEWTON AGUILA, a/k/a Ralph
Aguila, an individual, d/b/a/
Hydradermabrasion Systems,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

THIS CAUSE came before the Court upon Plaintiffs' Motion to Dismiss Defendant's Counterclaims and to Strike Defendant's Affirmative Defenses (ECF No. 134). Defendant filed a Response (ECF No. 138) and Plaintiffs replied (ECF No. 143). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the pertinent portions of the Record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.    BACKGROUND[1]

Plaintiffs Edge Systems LLC ("EDGE") and Axia MedSciences, LLC ("Axia") brought this action against Defendant Rafael Newton Aguila ("Aguila") seeking damages and injunctive

---

[1] The facts of this case have been previously set out in the Court's order denying Defendant's Motion to Dismiss. (ECF No. 110). For brevity's sake, the Court will only reiterate the facts most pertinent to the instant motion.

1

relief for trademark, trade dress, and patent infringement.[2]  *See generally* Compl. (ECF No. 1). Edge designs and sells skin health devices, including spa and skin treatment products and hydradermabrasion systems.  *Id.* ¶ 10.  Edge's premier product is its HydraFacial MD® hydradermabrasion system (the "Edge Machine").  *Id.* ¶ 12.  Edge's Machine incorporates technology that is claimed in six U.S. patents, owned by Plaintiff Axia and exclusively licensed to Edge.  One of the key patents for purposes of this motion is U.S. Patent No. 6,299,620 (the "'620 Patent") which was duly issued by the U.S. Patent and Trademark Office ("PTO") on October 9, 2001.  *Id.* ¶ 38.  Edge is the exclusive licensee of the '620 Patent.  *Id.*

Since its founding, Edge has continuously operated under the trade name "Edge Systems," and used the mark EDGE SYSTEMS in connection with the sale and promotion of its products.  *See* Pls.' Mot. to Dismiss (ECF No. 134).  Edge has used variations of its chevron-styled "E" logo since 1999.  *Id.* at 2.

In October 2014, Plaintiffs became aware that Defendant Rafael Aguila was selling a hydradermabrasion machine known as the HydraDerm MD or Hydradermabrasion MD ("Defendant's Machine"), which uses the same system and trade dress as Plaintiffs' Machine. Defendant's Machine also incorporates the use of serums that have identical or substantially similar names as those used in the Edge Machine.  Additionally, Defendant sells his machines using the same name as Plaintiff Edge—"Edge Systems"—and the same chevron style logo that Edge uses.  Defendant concedes his use of the same or nearly identical trademarks and trade dress as Plaintiffs, but claims that he is the first to use these marks and associated trade dress.

---

[2]  Plaintiff Axia's interest in this matter appears to be confined to its claim of patent infringement, whereas Plaintiff Edge has claims of both patent and trademark infringement.  In order to avoid confusion, the Court will reference both Plaintiffs in its analysis of Defendant's counterclaims and affirmative defenses, rather than distinguish which Plaintiff is relevant to a particular claim.

On December 2, 2014, this Court granted Plaintiffs motion for an *ex parte* temporary restraining order against Aguila. (ECF No. 15). In the order, this Court found that "[w]ithout the consent or authority of Edge, [Aguila] has been using the Edge Marks and Edge Trade Dress in connection with the sale, offering for sale, distribution, advertising, and/or promotion of microdermabrasion and hydradermabrasion systems and serums and solutions for microdermabrasion and hydradermabrasion systems." *Id.* ¶ 15. This Court further held that Axia's patent is likely infringed, *see id.* ¶ 20, and Aguila's continued unauthorized use of Edge's trademarks and trade dress, as well as Axia's patent, "will cause immediate and irreparable harm to Edge," *id.* ¶¶ 16, 21. As a result, this Court immediately enjoined Aguila from several activities, including "[u]sing, copying, simulating, or in any way infringing the Edge Marks or the Edge Trade Dress"; "[u]sing 'Edge' as the name or part of the name of its business"; as well as "[f]iling or prosecuting any trademark application at the United States Patent and Trademark Office for any of the Edge Marks or the Edge Trade Dress." *Id.* at 6.

On January 29, 2015, after an extensive hearing where both sides presented testimony and other evidentiary support, Magistrate Judge McAliley issued a Report and Recommendation to this Court recommending the Court grant Plaintiffs' application for preliminary injunction.[3] (ECF No. 81). Finding that Plaintiffs satisfied their burden in establishing the four elements required to obtain a preliminary injunction, this Court granted Plaintiffs' application for preliminary injunction. (ECF No. 90). In addition to Aguila's previously restricted activities, the preliminary injunction prevented Aguila from "[m]aking, using, offering for sale, selling within the United States, or importing into the United States, any product that infringes on U.S.

---

[3] Notably, Judge McAliley did not "find Defendant's claim that he was the first to use the disputed marks credible." (ECF No. 81 at 6). Judge McAliley reasoned that the assertion "that Defendant stumbled upon the same unusual names and logo for the same or highly similar products just before Plaintiffs did cannot be believed." *Id.* at 13. This Court agrees.

3

Patent No. 6,299,620, including but not limited to the 'HydraDerm MD' or 'Hydradermabrasion MD' product." *Id.* at 2.

On July 10, 2015, Defendant filed an Amended Answer, Affirmative Defenses and Counterclaims against Plaintiffs (ECF No. 128). Defendant's amended pleading included counterclaims for: declaration of unenforceability (Count III), antitrust (Count IV), patent false marking (Count V), cancellation of trademark registrations (Counts VI–VIII, and X), declaration of trademark rights (Count IX), and violations of the federal RICO statute (Counts XI–XIII). Defendant's Answer also includes the following affirmative defenses: unenforceability (Fifth), inequitable conduct (Eighth), prior use of trademarks (Ninth), and unclean hands (Eleventh). Plaintiff seeks to dismiss the counterclaims and strike the affirmative defenses on the basis that they consist mostly of legal conclusions unsupported by specific factual allegations.

## II.     STANDARDS OF REVIEW

### A.     Motions to Dismiss

A motion to dismiss a counterclaim for failure to state a claim is treated the same as a motion to dismiss a complaint. *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). When considering a motion to dismiss, the court must accept all of the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint must also contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

"[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### B. Motions to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts enjoy broad discretion when considering a motion to strike. *Morrison v. Exec. Aircraft Refinishing Co.*, 434 F. Supp. 2d 1314, 1317–18 (S.D. Fla. 2005). However, striking a defense from a pleading is a drastic remedy generally disfavored by courts unless "required for the purposes of justice." *Regions Bank v. Commonwealth Land Title Ins. Co.*, No. 11-23257-CIV, 2012 WL 5410609, at *2 (S.D. Fla. Nov. 6, 2012) (internal citation and quotation omitted). For that reason, a motion to strike an affirmative defense is typically denied unless the defense (1) has no possible relation to the controversy, (2) may cause prejudice to one of the parties, or (3) fails to satisfy the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Marley v. Jetshares Only, LLC*, No. 10-23178-CIV, 2011 WL 2607095, at *1 (S.D. Fla. June 30, 2011).

### III. ANALYSIS

#### A. Plaintiffs' Motion to Dismiss Defendant's Counterclaims

Plaintiffs seek to dismiss eleven of the thirteen counterclaims Defendant brings in the instant action.[4] For completeness and clarity, the Court will address each challenged counterclaim below.

---

[4] Defendant's brief response to Plaintiffs' motion only states that "the arguments that the plaintiffs make against the new claims are not logical or based on any case law." (ECF No. 138). Additionally, Defendant attempted to overcome any alleged pleading deficiencies by filing a

1.      Count III – Declaration of Unenforceability

Defendant asserts a counterclaim (Count III) requesting a declaration of unenforceability based on Plaintiffs' alleged inequitable conduct during the prosecution of the '620 patent application. Plaintiffs argue that such an allegation is unquestionably false. According to Plaintiffs, the entire basis of Defendant's inequitable conduct theory is that U.S. Patent No. 6,241,739 ("the '739 patent") was not submitted during the prosecution of the '620 patent.[5] Defendant alleges that three named inventors of the '620 patent failed to disclose highly material prior art they authored themselves thus exhibiting an intent to deceive the PTO. Plaintiffs respond by alleging that Defendant fails to plead any facts showing that any individual acted with the requisite intent necessary to plead inequitable conduct. Further, Plaintiffs argue that Defendant has not established how the '739 patent is material to patentability.

In order to prevail on a claim of inequitable conduct, a party must prove that the patent applicant misrepresented or omitted material information with the specific intent to deceive the PTO. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). The essential elements of an inequitable conduct claim reinforce the fact that it must be pled with particularity under Rule 9(b). *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). In fact, "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy" the heightened pleading rules. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009). The Federal

---

Second Amended Answer and Counterclaims ("SAAC") which the Court denied on the grounds of bad faith, undue prejudice, and futility. (ECF No. 154).

[5] The Court takes judicial notice of the fact the '739 patent was filed with the PTO on November 12, 1999, approximately one month prior to the filing of Plaintiffs' '620 patent. *See* Fed. R. Evid. 201. The Court also judicially notices the fact that the named inventor of the '739 patent, contrary to Defendant's assertions, is Stephen Waldron.

Circuit has emphasized that "[i]ntent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290.

Defendant's pleadings on this counterclaim are insufficient as a matter of law.  To begin with, Defendant has failed to plead with particularity the essential elements of an inequitable conduct cause of action.  Defendant's pleadings are devoid of any facts permitting an inference that there was an intent to deceive by any specific individual when submitting the '620 patent application to the PTO.  Additionally, Defendant has failed to adequately allege how the '739 patent is material to the patentability of the '620 patent.  Lacking sufficient particularity, Defendant's counterclaim for a declaration of unenforceability based on inequitable conduct (Count III) is dismissed.

   2.   <u>Count IV – Antitrust</u>

Defendant's counterclaim for Antitrust (Count IV) pursuant to 15 U.S.C. § 2 alleges that Plaintiffs are engaged in anticompetitive price-fixing agreements with other companies that results in diminished competition and increased prices for Plaintiffs' products.  To support this allegation, Defendant cites to the fact that Plaintiffs' profit-margins in the hydradermabrasion industry have not fallen in more than five years.  Defendant alleges this economic performance is indicative of a monopolized marketplace.  Plaintiffs respond to this allegation by asserting that mere enforcement of patent rights cannot give rise to a valid claim for monopolization.  Further, Plaintiffs argue that Defendant's monopolization claim is insufficient as a matter of law as it does not include specific facts that create a plausible inference that (1) Plaintiffs "knowingly and willingly" misrepresented or omitted material facts to the PTO; (2) the Patent Office granted the patent in justifiable reliance on the misrepresentation, and that Plaintiffs are seeking to enforce a patent with knowledge that the patent was procured by fraud.

The Court agrees that Defendant has failed to plead any facts relating to these required elements, much less facts sufficient to make Defendant's counterclaim plausible on its face. Nor has Defendant adequately pleaded facts sufficient to establish the elements of a monopolization claim under Section 2 of the Sherman Act. *See Morris Commc'ns Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1293–94 (11th Cir. 2004) (noting that a monopolization claim has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident"). Instead, Defendant offers the Court only conclusory allegations that are insufficient to withstand a motion to dismiss. Accordingly, Defendant's counterclaim for Antitrust (Count IV) must be dismissed.

    3.    <u>Count V – Patent False Marking</u>

Defendant's counterclaim for patent false marking (Count V) under 35 U.S.C. § 292 alleges that Plaintiffs falsely marked articles as patented when they are unpatented, with the intent to deceive the public. Specifically, Defendant alleges that Plaintiffs' Hydrafacial handpiece does not have any kind of abrasive on it, which is a requirement of Claim 1 of the '620 patent. Plaintiffs respond to this allegation by noting that Defendant has not alleged the requisite level of intent to support this claim.

A cause of action for false marking consists of two elements: "(1) marking an unpatented article and (2) intent to deceive the public." *Plasticos Vandux De Colombia, S.A. v. Robanda Int'l*, No. 10-60188-CIV, 2010 WL 5392646, at *2 (S.D. Fla. Dec. 21, 2010) (quoting *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009)). "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). As a

8

claim for false marking is based on an intent to deceive, a party asserting such a claim must also meet the heightened pleading requirements of Rule 9(b). *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011).

Defendant has failed to sufficiently plead specific facts demonstrating that Plaintiffs' have exhibited the purposeful deceit necessary for this cause of action. Defendant instead merely alleges that Plaintiffs' product does not meet all the requirements of Claim 1 of the '620 patent and offers a bare-bones conclusion that Plaintiffs falsely marked articles with an intent to deceive. The allegations of this counterclaim for false marking do not meet the strict pleading requirements of Rule 9(b), and Count V must be dismissed.

### 4. Counts VI–VIII, and X – Cancellation of Trademark Registrations

Defendant asserts four counterclaims under 15 U.S.C. § 1064 seeking the cancellation of four of Plaintiffs' registered trademarks. Defendant alleges in Count VI that Plaintiffs' trademark "Hydropeel" should be considered to be generic in nature. In Count VII, Defendant asserts that Plaintiffs' trademark "Vortex-Fusion" should also be considered as generic or descriptive in nature. Count VIII asserts that Plaintiffs' trademarked term "The Edge System" has been abandoned for more than three years. Lastly, Count X seeks cancellation on the alleged basis that Plaintiffs intentionally, willfully, and with bad faith, deceived the PTO in order to receive approval for the "Hydrafacial" trademark. Plaintiffs respond to all four counts by asserting that Defendant's cancellation claims should be dismissed as they all lack allegations of an essential element.

A party seeking cancellation of a trademark must prove that it has standing and that there are valid grounds for canceling the registration. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). As the more liberal of the essential elements of this cause of action, standing only requires "that the party seeking cancellation believe that it is likely to be damaged

by the registration." *Id.* One way that a party can demonstrate a belief in likely damage is "by establishing a direct commercial interest." *Id.* All of Defendant's trademark cancellation counterclaims lack allegations suggesting that Defendant believes it will be damaged by the challenged trademark registrations. Accordingly, Counts VI–VIII, and X are dismissed for failure to state a claim.

     5.     Count IX – Declaration of Trademark Rights

Defendant's counterclaim for declaration of trademark rights over Plaintiffs' "common law" trademark registrations (Count IX) alleges that Defendant developed and put into commerce all of the challenged marks prior to Plaintiffs use of the trademarks.[6] In support of this claim, Defendant offers an invoice for the sale of a HydraDerm MD system dated January 9, 2004, that references the marks that Defendant is seeking a declaratory judgment over. Plaintiffs initially argue that Defendant is procedurally barred from asserting this claim as Defendant failed to plead the basic elements for a claim for declaratory judgment. Additionally, Plaintiffs seek dismissal of this counterclaim on the grounds that Defendant has committed fraud on the Court by relying on a fraudulent exhibit to support the claim.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A trial court maintains broad discretion over whether or not to exercise jurisdiction over these types of claims. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that

---

[6] The marks that Defendant seeks a declaratory judgment over are: "Activ-4," "Antiox+," "Antiox-6," "Beta-HD," "DermaBuilder," "GlySal," "Edge Systems," and the Chevron E Logo used by Edge.

10

court to proceed to the merits before . . . dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011).

Defendant's counterclaim for a declaratory judgment does not serve a useful purpose. Courts routinely dismiss counterclaims "that contain repetitious issues already before the court by way of the complaint or affirmative defenses." *Medmarc*, 783 F. Supp. 2d at 1217. Because the counterclaim is wholly duplicative of Defendant's Ninth affirmative defense, the Court declines to exercise its discretion over this claim. Therefore, Count IX of Defendant's counterclaim must be dismissed.

6. <u>Counts XI–XIII – Violations of the Federal RICO Statute</u>

Defendant also asserts three counterclaims (Counts XI–XIII) for alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Specifically, Defendant asserts counterclaims for violations of 18 U.S.C. §§ 1962(b), (c), and (d). In response, Plaintiffs note that none of Defendant's RICO counterclaims include any facts upon which a claim of relief can be granted. Additionally, Plaintiffs argue that all of the RICO counterclaims are devoid of any factual pleading stating that Defendant has suffered an injury. Instead, Plaintiffs contend that Defendant merely recites the language of the statute in the form of conclusory allegations.

In order to establish a federal civil RICO violation under 18 U.S.C. §§ 1962(a)-(d) "the plaintiff 'must satisfy four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir.2006) (quoting *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir.1994)). In addition to the aforementioned substantive elements, a party bringing a civil RICO claim must also satisfy the requirements of 18 U.S.C. § 1964(c), which requires the party to show (1) requisite injury to

11

business or property, and (2) that such injury was by reason of the substantive RICO violation(s). *Id.* at 1283.

Defendant's counterclaims (Counts XI–XIII) provide nothing more than "[t]hreadbare recitals of the elements of a cause of action" and are insufficient as a matter of law. *See Iqbal*, 556 U.S. at 678. Defendant does not plead any supporting facts for each of the civil RICO counterclaims, let alone facts sufficient to state a claim to relief that is plausible on its face. "[N]aked assertions devoid of further factual enhancement" will not survive a motion to dismiss. *Id.* (internal quotation marks omitted). Therefore, Counts XI–XIII of Defendant's counterclaim are dismissed.

### B. Plaintiff's Motion to Strike Defendant's Affirmative Defenses

Plaintiffs assert that Defendant alleged mere legal conclusions unsupported by specific factual allegations in the affirmative defenses challenged here. The Court will now address each in turn.[7]

Defendant's Ninth affirmative defense (prior use of trademarks) alleges that Plaintiffs' trademarks were wrongfully issued by the PTO. In support of this affirmative defense Defendant asserts that: (1) Plaintiffs' trademarks are all descriptive of goods to which they apply and are thus incapable of being trademarks; (2) Plaintiffs' trademarks are all in common use and are public property; and (3) Plaintiffs have failed to use reasonable diligence to seek protection of their alleged rights. Lastly, Defendant claims that he was already using the Edge logo and Edge Systems name before the Plaintiffs. Plaintiffs once again assert that Defendant is relying on a

---

[7] Defendant's Fifth affirmative defense (unenforceability) and Eighth affirmative defense (inequitable conduct) allege that Plaintiffs engaged in inequitable conduct during the prosecution of the '620 patent application before the PTO. These affirmative defenses are duplicative of Defendant's counterclaim for inequitable conduct (Count III). Since the Court already determined the inequitable conduct counterclaim was insufficient as a matter of law, these affirmative defenses must be stricken. *See* Fed. R. Civ. P. 12(f).

fraudulent exhibit to support the factual allegations relating to the prior use of Plaintiffs' trademarks.  As a result, Plaintiffs seek to strike the Ninth affirmative defense on the grounds Defendant is attempting to perpetrate a fraud on this Court.

"Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986); *see also* Fed. R. Civ. P. 11.  In fact, "[t]he court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." *Procup*, 792 F.2d at 1074.  Federal courts have used their inherent power to dismiss claims based on a party's fabrication of evidence.  *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (cause of action dismissed for "fraud on the court" where plaintiff attached a bogus agreement to the complaint); *see also Vargas v. Peltz,* 901 F. Supp. 1572, 1581 (S.D. Fla. 1995); *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 390 (E.D. Cal. 1992) (default judgment appropriate where plaintiff submitted false document and committed perjury in furtherance of fraud); *Eppes v. Snowden*, 656 F.Supp. 1267, 1279 (E.D. Ky. 1986) (defendant's answer and counterclaim stricken where defendant committed "fraud on the court" by producing "backdated" letters).

The Court is unconvinced that the exhibits Defendant offers in support of the Ninth affirmative defense are authentic.  Prior testimony by the Defendant and the Report and Recommendation issued by Judge McAliley only highlight the Court's grave concerns over Defendant's willingness to manufacture evidence and abuse the judicial process.  Clear and convincing evidence has been presented that Defendant knowingly advanced a document of questionable authenticity and relied upon it in Defendant's pleadings.  Such repeated submissions of fraudulent documents and testimony form a sufficient basis for the Court to strike

the Ninth affirmative defense. *See Vargas*, 901 F. Supp. at 1582 ("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.") (citation omitted).

Defendant's Eleventh affirmative defense (unclean hands) asserts three allegations against Plaintiffs. First, that in 2006, one of Plaintiffs' employees made fraudulent purchases with Defendant's credit card. Second, Defendant alleges that Plaintiff Edge's President "verbally and physically threatened" Defendant earlier in this cause of action. Lastly, Defendant alleges that Plaintiffs' Hydrafacial device has more than 100 complaints and therefore is a danger to the public.

Plaintiffs are correct in stating that to properly assert an affirmative defense of unclean hands, "the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted." *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1332 (S.D. Fla. 2011). After all, the unclean hands doctrine "closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329–30 (1994).

Here, the alleged wrongdoing by Plaintiffs, or their employees, has no direct relation to the claims asserted by Plaintiffs in the Complaint. The Court therefore concludes that Defendant's Eleventh affirmative defense is insufficient and should be stricken.

### C.     CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Plaintiffs' Motion to Dismiss and Strike Affirmative Defenses (ECF No. 134) is GRANTED as follows:

1. Defendant's Counterclaims (Counts III through XIII) are DISMISSED WITH PREJUDICE.

2. Defendant's Fifth, Eighth, Ninth, and Eleventh Affirmative Defenses are hereby stricken.

3. Defendant has until November 6, 2015, to replead the stricken defenses.

DONE AND ORDERED in Chambers at Miami, Florida, this 26th day of October, 2015.

/s/ K. M. Moore
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc: All counsel of record