**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:14-cv-24517-KMM/McAliley**

EDGE SYSTEMS, LLC,
a California limited liability company,
and AXIA MEDSCIENCES, LLC,
a Delaware limited liability company,

       Plaintiffs,

    v.

Rafael Newton Aguila, a/k/a Ralph Aguila,
an individual, d/b/a Hydradermabrasion Systems,

       Defendant.

_____/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND NO
INVALIDITY OF EDGE SYSTEMS' PATENTS AND TRADEMARKS AND OF
VIOLATION OF FLORIDA STATE LAW CLAIMS AND
REQUEST FOR PERMANENT INJUNCTION**

TABLE OF CONTENTS

Page No.

I.      SUMMARY AND BACKGROUND OF THE PRESENT DISPUTE ............................1

        A.      Edge's Patents, Trademarks And Product Images ................................1

        B.      Defendant's Pattern Of Deceitful Conduct .........................................2

II.     LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................5

III.    THE EDGE MARKS .......................................................................................6

        A.      There Is No Genuine Issue of Material Fact That Edge's Has Valid
                Common Law Rights in its Marks .........................................................6

                1.      The EDGE SYSTEMS Trade Name and the Chevron "E" Logo ..............7

                2.      ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, GLYSAL, and
                        DERMABUILDER ............................................................................8

        B.      There Is No Genuine Issue Of Material Fact That Edge's Registered
                Trademarks Are Not Invalid .................................................................9

        C.      Defendant Has Infringed Edge's Registered Trademarks and Common
                Law Marks and Falsely Designated the Origin of his Goods ...............10

                1.      Likelihood of Confusion ...............................................................11

                        a.      Type And Strength Of The Asserted Marks .................12

                        b.      Similarity Of The Marks ............................................13

                        c.      Similarity Between The Products ...............................14

                        d.      Similarity Of The Sales And Advertising Methods ......14

                        e.      Defendant's Intent.....................................................14

                        f.      Actual Confusion ......................................................15

                2.      Defendant Does Not Dispute That There is a Likelihood of
                        Confusion ...................................................................................15

IV.     THE COURT SHOULD GRANT SUMMARY JUDMGENT THAT U.S.
        PATENT NO. 6,299,620 IS INFRINGED AND NOT INVALID ...................17

        A.      The Court Should Grant Summary Judgment that the '620 Patent is
                Infringed..........................................................................................17

                1.      U.S. Patent No. 6,299,620.............................................................17

                2.      Defendant's Accused Product........................................................17

                3.      Legal Standard ...........................................................................18

  B. The Court Should Grant Summary Judgment that the '620 Patent is Not Invalid ....................................................................................................22

    1. The '739 Patent Is Not Prior Art .................................................................22

    2. The '804 Patent Does Not Anticipate Claim 1 of the '620 Patent .............24

    3. The '431 Patent Does Not Anticipate Claim 1 of the '620 Patent .............25

  C. Plaintiffs are Entitled to Summary Judgment that the Asserted Claims of the '591 and '620 Patents are Not Invalid Under 35 U.S.C. §§ 101, 103, or 112 ................................................................................................................25

V. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' FLORIDA STATE LAW CLAIMS ...................................................................................25

VI. THE COURT SHOULD GRANT A PERMANENT INJUNCTION AGAINST DEFENDANT'S INFRINGING ACTIVITIES ................................................................26

  A. Permanent Injunctive Relief Against Defendant's Infringement of the '591 Patent is Appropriate .......................................................................................26

  B. Permanent Injunctive Relief Against Defendant's use of Edge's Marks is Appropriate .......................................................................................................28

VII. CONCLUSION .......................................................................................................................29

VIII. CERTIFICATION OF GOOD FATIH .......................................................................29

## TABLE OF AUTHORITIES

Page No(s).

*Allen v. Tyson Foods,*
    121 F.3d 642 (11th Cir. 1997) ...................................................................5

*AmBrit v. Kraft,*
    812 F.2d 1531 (11th Cir.1986) ....................................................11, 12, 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505 (1986)......................................................5

*Andrews v. Metro N. C.R. Co.,*
    882 F.2d 705 (2nd Cir. Conn. 1989) .......................................................16

*Apple Inc. v. Samsung Elecs. Co.,*
    695 F.3d 1370 (Fed. Cir. 2012).................................................................26

*Aronowitz v. Health-Chem Corp.,*
    513 F.3d 1229 (11th Cir. 2008) ................................................................12

*Babbit Elecs., Inc. v. Dynascan Corp.,*
    38 F.3d 1161 (11th Cir. 1994) ..................................................................29

*Borinquen Biscuit Corp. v. M.V. Trading Corp.,*
    443 F.3d 112 (1st Cir. 2006)...................................................................8, 9

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg, Inc.,*
    510 F.2d 1004 (5th Cir. 1975) .............................................................25, 26

*Burgos v. Chertoff,*
    274 Fed. Appx. 839 (11th Cir. 2008)........................................................5

*Burroughs Wellcome Co., v. Barr Labs., Inc.,*
    40 F.3d 1223 (Fed. Cir. 1994)..................................................................23

*Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC,*
    605 F.3d 931 (11th Cir. 2010) ..................................................................12

*Celsis in Vitro, Inc. v. CellzDirect, Inc.,*
    664 F.3d 922 (Fed. Cir. 2012)..................................................................27

*Continental Ins. Co. of New York v. Sherman,*
    439 F.2d 1294 (5th Cir. 1971) ...................................................................9

*Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.,*
    304 F.3d 1167 (11th Cir. 2002) ................................................................10

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,*
    508 F.3d 641 (11th Cir. 2007) .............................................................10, 11

*Cybor Corp. v. FAS Techs.*,
  138 F.3d 1448 (Fed. Cir. 1998) (en banc)................................................................18

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013).................................................................26, 27

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)........................................................................................26

*FN Herstal, S.A. v. Clyde Armory, Inc.*,
  C.A. 3:12-cv-102-CAR, 2015 WL 196208 (M.D. Ga. Jan. 8, 2015)..................9, 16

*Frehling Enters. v. Int'l Select Group, Inc.*,
  192 F.3d 1330 (11th Cir. Fla. 1999) ...................................................12, 13, 14, 15

*Home & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*,
  598 F. Supp. 2d 1248 (M.D. Fla. 2009).......................................................12

*Honeywell Inc. v. Victor Co. of Japan, Ltd.*,
  298 F.3d 1317 (Fed. Cir. 2002)..............................................................23, 24

*IMPAX Labs., Inc. v. Aventis Pharms., Inc.*,
  545 F.3d 1312, 1314 (Fed. Cir. 2008).................................................22, 24, 25

*Investacorp, Inc. v. Arabian Inv. Banking Corp.*,
  931 F.2d 1519 (11th Cir. 1991) .........................................6, 8, 9, 10, 23, 25

*Jaguar Cars Ltd. v. Skandrani*,
  771 F. Supp. 1178 (S.D. Fla. 1991) ...........................................................29

*Jaguar Imports, LLC v. Phoenix Global Ventures, Inc.*,
  No. 6:12-cv-1486-Orl-31KRS, 2013 WL 3491160 (M.D. Fla. July 2, 2013) ........27

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*,
  716 F.2d 833 (11th Cir. 1983) ...................................................................11

*John H. Harland Co. v. Clarke Checks, Inc.*,
  711 F.2d 966 (11th Cir. 1983) ...................................................................12

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991)..................................................................18

*Mahurkar v. C.R. Bard, Inc.*,
  79 F.3d 1572 (Fed. Cir. 1996)....................................................................23

*Mas-Hamilton Group v. LaGard, Inc.*,
  156 F.3d 1206, 1216 (Fed. Cir. 1998).......................................................22

*McDonald's Corp. v. Robertson,*
    147 F.3d 1301 (11th Cir. 1998) ...................................................................28

*Meadowgreen Music Co. v. Voice in the Wilderness Broad., Inc.,*
    789 F. Supp. 823 (E.D. Tex. 1992) ...............................................................9

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.,*
    522 F.3d 1211 (11th Cir. 2008) ...................................................................11

*Nane Jan, LLC v. Seasalt and Pepper, LLC,*
    No. 2:14-cv-208-FtM-29CM, 2014 WL 5177655 (M .D. Fla. Oct. 14, 2014)
    ....................................................................................................10, 11, 25, 26

*Nike, Inc. v. Leslie,*
    No. 85-960-15, 1985 WL 5251 (M.D. Fla. June 24, 1985) ..................................28

*PetMed Express, Inc. v. Medpets.com, Inc.,*
    336 F. Supp. 2d 1213 (S.D. Fla. 2004) ........................................................26

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................18

*Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Fl,*
    546 F. Supp. 987 (S.D. Fla. 1982) .............................................................14

*Robert Bosch LLC v. Pylon Mfg. Corp.,*
    659 F.3d 1142 (Fed. Cir. 2011)..................................................................26

*Sanofi-Synthelabo v. Apotex, Inc.,*
    470 F.3d 1368 (Fed. Cir. 2006)..................................................................28

*Scott v. Harris,*
    550 U.S. 372, 127 S. Ct. 1769 (2007).........................................................5, 8

*Spansion, Inc. v. ITC,*
    629 F.3d 1331 (Fed. Cir. 2010)................................................................23, 24

*Suzuki Motor Co. v. Jiujiang Hison Motor Boat Mfg. Co.,*
    No. 1:12-cv-20626, 2012 WL 640700 (S.D. Fla. Feb. 27, 2012) ....................14, 27

*Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,*
    889 F.2d 1018 (11th Cir. 1989) ...................................................................6

*Tana v. Dantanna's,*
    611 F.3d 767 (11th Cir. 2010) ...............................................................10, 11

*TracFone Wireless, Inc. v. GSM Grp., Inc.,*
    555 F.Supp. 2d 1331 (S.D. Fla. 2008) .....................................................25, 26

*Under Armour, Inc. v. 51nfljersey.com*,
  No. 13-62809-CIV, 2014 WL 1652044 (S.D. Fla. Apr. 23, 2014)....................................26, 28

*Verdegaal Bros., Inc. v. Union Oil Co. of California*,
  814 F.2d 628 (Fed. Cir. 1987).........................................................................................24

*Villar v. City of Aventura*,
  No. 13-22708-CIV, 2014 WL 3400988 (S.D. Fla. July 11, 2014) ........................................5, 8

*Welding Servs., Inc. v. Forman*,
  509 F.3d 1351 (11th Cir. 2007) ......................................................................................8, 9

*Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*,
  177 F.3d 1204 (11th Cir. 1999) .........................................................................................9

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
  602 F.3d 1108 (9th Cir. 2010) ........................................................................................7, 8

## OTHER AUTHORITIES

15 U.S.C. § 1057...........................................................................................................8, 9

15 U.S.C. § 1114.................................................................................................10, 11, 16

15 U.S.C. § 1115................................................................................................................9

15 U.S.C. § 1116.........................................................................................................26, 29

15 U.S.C. § 1125 ...................................................................................................... passim

15 U.S.C. § 1127...............................................................................................................10

35 U.S.C. § 101................................................................................................................25

35 U.S.C. § 102.........................................................................................................23, 24

35 U.S.C. § 103................................................................................................................25

35 U.S.C. § 112................................................................................................................25

35 U.S.C. § 271................................................................................................................18

35 U.S.C. § 282................................................................................................................22

35 U.S.C. §362................................................................................................................25

M.P.E.P. § 2131.........................................................................................................24, 25

http://www.allergan.com/ ...................................................................................................3

http://www.lumenis.com/................................................................................................................3

www.edge-systems.com ...............................................................................................................3,

www.hydradermabrasion.com ........................................................................................................2

Plaintiffs Edge Systems LLC ("Edge") and Axia MedSciences, LLC ("Axia") (collectively, "Plaintiffs"), by and through their undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, move for Summary Judgment against Defendant Rafael Newton Aguila, a/k/a Ralph Aguila ("Defendant") for infringement of U.S. Patent No. 6,299,620, no invalidity of U.S. Patent No. 6,299,620, infringement of U.S. Trademark Registration Nos. 2,992,734, 3,500,086, 4,114,466, no invalidity of U.S. Trademark Registration Nos. 2,992,734, 3,500,086, 4,114,466, infringement of Edge's trade name EDGE SYSTEMS, the Chevron "E" Logo, and the marks ANTIOX+, ANTIOX-6, ACTIV-4, BETA-HD, GLYSAL, and DERMABUILDER, no invalidity of Edge's trade name EDGE SYSTEMS, the Chevron "E" Logo, and the marks ANTIOX+, ANTIOX-6, ACTIV-4, BETA-HD, GLYSAL, and DERMABUILDER, false designation of origin, violation of Florida's common law unfair competition laws, violation of Florida's Deceptive and Unfair Trade Practices Act, and a permanent injunction.

## I.  SUMMARY AND BACKGROUND OF THE PRESENT DISPUTE

### A.  Edge's Patents, Trademarks And Product Images

Plaintiff Edge is a worldwide leader in microdermabrasion and hydradermabrasion systems.  Since its founding, Edge has continuously operated under the trade name "Edge Systems," using the mark EDGE SYSTEMS in connection with the sale and promotion of its products, which are covered by a number of patents owned by Plaintiff Axia and licensed to Edge, including U.S. Patent No. 6,299,620 ("the '620 Patent").  (*See* Dkt. 13-04 at 3-10, ¶ 4). Since 1999, Edge has used variations of its Chevron "E" Logo formed by three triangles, as shown in the examples below.  (*Id.*, ¶ 5).



*1999-2011*



*2011-PRESENT*

Edge owns U.S. Trademark Registration Nos. 2,992,734 for the mark THE EDGE SYSTEM ("the '734 Registration"); 3,500,086 for the mark HYDROPEEL ("the '086 Registration"); and 4,114,466 for the mark VORTEX-FUSION ("the '466 Registration") (collectively, the "Edge Registered Marks"). Material Fact Nos. 4-6.

Edge owns rights to Edge's trade name, EDGE SYSTEMS, its Chevron "E" Logo, and a number of other common law trademarks which are shown in the table below (collectively, the "Edge Common Law Marks") along with dates of first use:

| MARK | REG. NO. | FIRST USE AT LEAST AS EARLY AS: |
| --- | --- | --- |
| "EDGE SYSTEMS" | Common Law | 1997 |
| Chevron "E" Logo | Common Law | 1999 |
| "ACTIV-4" | Common Law | 2005 |
| "ANTIOX+" | Common Law | 2014 |
| "ANTIOX-6" | Common Law | 2005 |
| "BETA-HD" | Common Law | 2005 |
| "DERMABUILDER" | Common Law | 2009 |
| "GLYSAL" | Common Law | 2010 |

Material Fact Nos. 9-14.

**B.** **Defendant's Pattern Of Deceitful Conduct**

Plaintiffs brought this case against Defendant alleging, *inter alia*, patent, trademark, and trade dress infringement after Defendant assumed Edge's trade name, began using Edge's logo and started infringing Edge's trademarks in an attempt to deceive customers into believing that he is Edge. (*See* Dkt. 1).

In October of 2014, Edge was surprised to learn that one of its main competitors, Lumenis, was apparently offering a copycat version of the Edge Machine on the website www.hydradermabrasion.com ("Defendant's Lumenis Website"). Material Fact No. 35. When Edge contacted Lumenis, Edge learned that Lumenis was just as surprised by Defendant's Lumenis Website. *Id*. After further evaluation, Edge and Lumenis both discovered that Defendant's Lumenis Website was actually registered to the Defendant. *Id*. Defendant was apparently using Lumenis' trade name and trademarks to advertise a knock-off Edge Machine. *Id*.

On October 27, 2014, Edge sent the Defendant a cease and desist letter and asked that it stop infringing the asserted patents. (Dkt. 13-04, ¶20; Dkt. 13-06) Lumenis separately asked Defendant to cease using Lumenis' trade name and trademarks. (Dkt. 13-04, ¶21.) On October 29, 2014, just two days after Edge's letter, Defendant filed for a Fictitious Business Name with

the Florida Department of State for the name EDGE SYSTEMS.[1]  (Dkt. 13-15, ¶4; Dkt. 13-27)
Soon thereafter, Defendant changed Defendant's Lumenis Website to blatantly pass itself off as
***Edge*** ("Defendant's Website I").  (Dkt. 13-15, ¶13; Dkt. 13-16; Dkt. 13-04, ¶23.)  Defendant has
gone to great lengths to attempt to assume Edge's identity, including filing its own trademark
application for the EDGE SYSTEMS trade name and the Chevron "E" Logo with a fraudulent
declaration as to the purported date of Defendant's first use.[2]  (Dkt. 13-15, ¶¶5, 6.)  Defendant
also filed fraudulent trademark applications and obtained trademark registrations for Edge's
common law marks ANTIOX-6, ACTIV-4, BETA-HD, and DERMABUILDER.[3]  Material Fact
Nos. 26-29. Defendant also started using the website www.edge-systems.com ("Defendant's
Website II")—which even incorporates Edge's trade name in the domain name—to advertise the
same infringing material.  (Dkt. 13-15, ¶13; Dkt. 13-17; Dkt. 13-04, ¶23.)  Collectively,
Defendant's Website I and Defendant's Website II will be referred to herein as "Defendant's
Websites."

Defendant didn't stop there, however.  At least one of its "Regional Sales Managers"
passed himself off as being affiliated with Edge and even included "Edge Systems" in his email
signature lines.  (Dkt. 13-02, ¶3; Dkt. 13-03.)  Defendant's receptionist greeted callers as having
called "Edge Systems."  (Dkt. 13-03, ¶5.) In fact, when an Edge employee called the telephone
number posted on Defendant's websites, the receptionist was confused about Defendant's
affiliation with Edge. (Dkt. 13-31, ¶¶4, 5.) When a potential customer asked if there was a
difference between the Edge Machine and the Defendant's knock-off product, Defendant's
"Regional Sales Manager" represented that the knock-off product is Edge's newest upgrade of
the Edge Machine. (Dkt. 13-03, ¶7.)

---

[1] As of November 24, 2014, Defendant had at least eight active fictitious business names
registered with the State of Florida, including "Lumenis, Ltd." and "Allargen," both obvious
references to other major companies unrelated to Defendant.   (Dkt. 13-27 at 2; *see*
http://www.lumenis.com/ and http://www.allergan.com/).

[2] Defendant's fraudulent declaration attests to a "first use in commerce" in March 1996.
Defendant intentionally selected this date to predate Edge's founding in 1997, which is publicly
available.

[3] Edge has filed petitions for the cancellation of these fraudulently-procured trademarks
with the U.S. Patent and Trademark Office ("PTO").

Defendant's actions have had a profound and confusing effect on the market.  At least four separate customers or potential customers have been fooled into believing that Defendant was Edge and that his products were real Edge products.  (Dkt. 13-03, ¶¶4-9; Dkt. 13-28 ¶3; Dkt. 55 at 134-38; Dkt. 86-02, at ¶¶3-8.)  One customer, who had purchased one of Defendant's knock-off machines, even approached Edge seeking training and certification for what she believed was an authentic Edge product.  (Dkt. 13-28, ¶8.)  She was shocked to find that she had spent $6,000 on a knock-off that she did not feel comfortable using. (Dkt. 13-28, ¶¶3, 8.)

Another customer was confused by Defendant's Website II and believed it to be affiliated with Edge.  (Dkt. 13-03, ¶4.)  Although she had previously purchased an authentic Edge Machine, the design of Defendant's knock-off product that was advertised on the Defendant's Website fooled her into thinking that Defendant's knock-off product was authentic.  (Dkt. 13-03, ¶¶3, 5.)  Defendant even confused some of Edge's seasoned employees as to Defendant's affiliation with Edge.  (Dkt. 13-02, ¶¶3-6.)

Immediately after filing the case, Plaintiffs moved for a preliminary injunction.  (*See* Dkt. 13).  In opposition of Plaintiffs' motion, Defendant fabricated a story that in 1996, as a 19-year-old college student at the University of Florida, he started using the trade name "Edge Systems" and Edge's Chevron "E" Logo just a few months before Plaintiff Edge.  (*See* Dkt. 35 at 5–6).  At the December 19, 2014 hearing on Plaintiffs' motion for preliminary injunction, Defendant testified under oath to this story.  (*See*, *e.g.*, Dkt. 55 at 309:2–312:21).  At that time, Defendant did not provide any documentary evidence of his alleged prior use.  (*Id.* at 336).  In its Report and Recommendation on Plaintiffs' motion, the Court stated that it "did not find Defendant's claim that he was the first to use the disputed marks credible." (Dkt. 81 at. 6).

After the December 19, 2014 hearing, Defendant attempted to submit two invoices as evidence of his alleged prior use of Edge's trade name, logo, and trademarks.  (*See* Dkt. 64).  The Court rejected Defendant's submission as untimely.  (*See* Dkt. 65).  *See also* Dkt. 81 at. 21 ("There is nothing inherent about [Exhibits D and E] to suggest that they are authentic.").  Defendant attached these two invoices to support his first Amended Answer, Affirmative Defenses, and Counterclaims ("FAAC").  (Dkt. 128 at 42 & 43).  Defendant again attached these two invoices to his proposed Second Amended Answer, Affirmative Defenses, and Counterclaims ("SAAC") as Exhibits D and E.  (Dkt. 135 at 78-79)  The Court denied Defendant leave to file his proposed amendments as "not only exhibit[ing] bad faith, but also appear[ing] to

demonstrate a continuous disregard for the judicial process which threatens the integrity of the judicial system." (Dkt. 154).   In denying several of Defendant's counterclaims and striking several of his affirmative defenses, the Court has found that it "is unconvinced that [Exhibits D and E] are authentic."  (Dkt. 158 at 13).  The Court further noted that "[c]lear and convincing evidence has been presented that Defendant knowingly advanced a document of questionable authenticity and relied upon it in Defendant's pleadings." (*Id.*)

In his proposed SAAC, Defendant also alleged infringement of his registered marks for ACTIV-4, ANTIOX-6, BETA-HD, and DERMABUILDER.  (*See* Dkt. 135 at 78 & 79).  The Court's denial of Defendant's SAAC in particular noted: "Defendant relies on four trademark registrations he obtained over Plaintiffs' marks using Plaintiffs' images as the basis for his amended counterclaims as well as potentially fraudulent documents in support of those trademarks." (Dkt. 154).

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505 (1986) (citing Fed. R. Civ. P. 56(c)).  A fact is material if it is a legal element of the claim which might affect the outcome of the case.  *See Burgos v. Chertoff*, 274 Fed. Appx. 839, 841 (11th Cir. 2008) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

"There is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact' for the nonmoving party."  *Villar v. City of Aventura*, No. 13-22708-CIV, 2014 WL 3400988, at *3 (S.D. Fla. July 11, 2014) (quoting *Anderson*, 477 U.S. at 254).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007) (quoting *Anderson*, 477 U.S. at 257-248).

### III.  THE EDGE MARKS

Edge has developed and cultivated immense goodwill and brand recognition in its distinctive marks.  In the past five years alone, Edge has spent over $5.6 million advertising its products in connection with its marks.  Declaration of William Cohen ("Cohen Decl."), ¶5. National media outlets have profiled Edge and reinforced the public's association between Edge and its marks.  A sample includes: *People Magazine*, *Allure*, *The Hollywood Reporter*, *Tampa Bay Times*, *New Beauty*, *OK! Magazine*, *Star Magazine*, *Elle Beauty Book*, *Harper's Bazaar Magazine*, *Essence*, *Simply Her*, *Examiner.com*, *In Style*, *Good Day LA*, *The Doctors*, *KLBK News*, *Great Day Houston*, and the *Real Housewives of Beverly Hills*.  (Dkt. 13-04, ¶12.)

Edge's products and services are offered at more than 2,700 locations throughout the United States, including all 50 states.  Cohen Decl., ¶6.  Edge sells its products to many consumers, including dermatologists, plastic surgeons, and health spas.  (Dkt. 13-04, ¶14.)  Edge also advertises its products at trade shows, seminars, and through trade publications, social media, search engine optimization, emails, and webinars.  (*Id.*, ¶10.)  As a result of Edge's substantial efforts, the Edge Registered Marks and the Edge Common Law Marks (collectively, the "Edge Marks") have become extremely valuable as an identifier of the company, its products, and the substantial goodwill Edge has earned in the market.  (*Id.*, ¶15.)  The Edge Marks have become synonymous in the consumer's mind with Edge and its high quality products.  (*Id.*)

Edge's sales force includes over 60 U.S. employees covering each of the 50 states. Cohen Decl., ¶7.  Edge has continuously operated a website since 1999, displaying Edge's marks in connection with the sales and promotion of its product.  (Dkt. 13-04, ¶16.)  Edge's website averages over 55,000 page views per month.  Cohen Decl., ¶7.  Edge's efforts have paid off. Over the last five years, Edge has generated over $125 million in revenue.  Cohen Decl., ¶7.

A.     **There Is No Genuine Issue of Material Fact That Edge's Has Valid Common Law Rights in its Marks**

"Under the common law, trademark rights are appropriated only through actual [and continuous] prior use in commerce."  *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989).  To acquire common law rights in a mark, a party must show that (1) it is the prior user of the mark, and (2) it acquired a protectable interest in the mark because the mark is either inherently distinctive or has acquired a secondary meaning.  *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1522 (11th Cir. 1991).

1.      **The EDGE SYSTEMS Trade Name and the Chevron "E" Logo**

Defendant does not dispute that the EDGE SYSTEMS trade name and the Chevron "E" Logo are inherently distinctive.  Material Fact No. 22.  In fact, Defendant admitted that the marks are inherently distinctive when he filed his own trademark application on November 1, 2014, for the EDGE SYSTEMS trade name and the Chevron "E" Logo with the PTO.  (Dkt. 50-03); *see Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1120 & n.13 (9th Cir. 2010).

Since its founding in 1997, Edge has continuously operated under the trade name EDGE SYSTEMS.  Material Fact No. 11.  In fact, Edge's Articles of Incorporation, filed with the Secretary of State of the State of California on September 18, 1997, were filed for Edge Systems Corporation.  *See* Razai Decl., Ex. 2.  Since 1999, Edge has used variations of its Chevron "E" Logo in connection with the sale and promotion of its products. Material Fact No. 12.

Defendant has never disputed Edge's actual and continuous use of the EDGE SYSTEMS trade name and the Chevron "E" Logo.  Defendant has only ever argued that it used the EDGE SYSTEMS trade name and the Chevron "E" Logo before Edge.  (*See* Dkt. 35 at 13).  Defendant's **only** documents supporting its contention are the fraudulent invoices, Exhibits D and E.[4]  Material Fact No. 18.  However, the Court has questioned the authenticity of Exhibits D and E on multiple occasions. Material Fact No. 34.  Moreover, Defendant has explicitly stated that "[his] normal business practice was to either not make an invoice at all on a sale, or [he] would throw away invoices that were created after one or two months." *See* Razai Decl. Ex. 3, Response to Interrogatory No. 7.  But inexplicably, Defendant has produced Exhibits D and E that purportedly show Defendant's prior use.  Combined with Defendant's contradictory testimony, the circumstances surrounding the production of Defendant's Exhibits D and E demonstrate that they are unmistakably fraudulent.

The earliest record of Defendant's use of the EDGE SYSTEMS trade name and the Chevron "E" Logo is November 2014, when he began using those marks on Defendant's Websites.  (Dkt. 13 at 5-6)  Before that date, Defendant was selling its knock-off machine under

---

[4] Indeed, the Defendant confirmed on October 30, 2015, in response to the Court's Order Granting Plaintiffs' Motion to Compel (Dkt. 157), entered on October 19, 2015, that he had no other responsive documents other than Exhibit D in his possession, custody, or control.  (Dkt. 170-05, Response to Request for Production No. 16.)

the assumed trade name and trademarks of Lumenis, one of Edge's main competitors, on the Defendant's Lumenis Website. (Dkt. 13-04, ¶19; Dkt. 13-05)

Because Defendant's evidence and testimony is blatantly contradicted by the record so that no reasonable jury could believe it, the Court should not adopt Defendant's version of the facts for purposes of ruling on this Motion for Summary Judgment. *See Scott*, 550 U.S. at 380 (2007). Even if the Court were to consider Defendant's fraudulent invoices, the totality of Defendant's evidence is of insufficient caliber or quantity to allow a rational finder of fact for the nonmoving party, and thus fails to create a genuine issue of material fact with respect to Defendant's alleged prior use of the EDGE SYSTEMS trade name and the Chevron "E" Logo. *See Villar*, No. 13-22708-CIV, 2014 WL 3400988, at *3 (S.D. Fla. July 11, 2014).

As there is no genuine issue of material fact that Edge is the prior user of the EDGE SYSTEMS trade name and the Chevron "E" Logo and there is no genuine issue of material fact that the marks are inherently distinctive, Plaintiffs respectfully request that the Court grant summary judgment that Edge has valid common law rights in the EDGE SYSTEMS trade name and the Chevron "E" Logo. *See Investacorp*, 931 F.2d 1519, 1522 (11th Cir. 1991).

## 2. **ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, GLYSAL, and DERMABUILDER**

Defendant does not put forth ***any evidence*** to dispute that the marks ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, GLYSAL, and DERMABUILDER (collectively, the "Edge Serum Marks") are each inherently distinctive. In fact, Defendant admitted that the marks ANTIOX-6, ACTIV-4, BETA-HD, and DERMABUILDER are inherently distinctive by filing trademark applications with the PTO for the registration of these marks. Material Fact Nos. 25-28; *See Zobmondo* 602 F.3d at 1120 & n.13. Registration of a trademark on the principal register of the USPTO is *prima facie* evidence of validity and establishes a presumption that the mark is protectable or distinctive. 15 U.S.C. § 1057(b); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 n.3 (11th Cir. 2007). Where the USPTO does not require proof of secondary meaning for a registered mark, the mark is presumed to be inherently distinctive. *Id.* (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 & n.2 (1st Cir. 2006)). Thus, the USPTO agreed that these marks are each inherently distinctive when it granted Defendant's federal registrations without requiring proof of acquired secondary meaning. Razai Decl., Exs. 4-7; *see Forman*, 509 F.3d at 1357 n.3.

Defendant again admitted that the marks ANTIOX-6, ACTIV-4, BETA-HD, and DERMABUILDER are inherently distinctive when he attempted to allege that Edge infringes these fraudulently-procured marks. (Dkt. 135 at 58).  Material Fact Nos. 19-21.  *See FN Herstal, S.A. v. Clyde Armory, Inc.*, C.A. 3:12-cv-102-CAR, 2015 WL 196208, at *7 n.93 (M.D. Ga. Jan. 8, 2015); *Meadowgreen Music Co. v. Voice in the Wilderness Broad., Inc.*, 789 F. Supp. 823, 825 (E.D. Tex. 1992) (admission of ownership of valid intellectual property right is *prima facie* evidence of compliance with the requirements for securing that intellectual property right); *Continental Ins. Co. of New York v. Sherman,* 439 F.2d 1294, 1298 (5th Cir. 1971).

As there is no genuine issue of material fact that Edge is the prior user of the Edge Serum Marks and that the marks are inherently distinctive, Plaintiffs respectfully request that the Court grant summary judgment that Edge has valid common law rights in the Edge Serum Marks.  *See Investacorp*, 931 F.2d 1519, 1522 (11th Cir. 1991).

**B.**   **There Is No Genuine Issue Of Material Fact That Edge's Registered Trademarks Are Not Invalid**

Edge is the owner of the Edge Registered Marks for the THE EDGE SYSTEM, VORTEX-FUSION, and HYDROPEEL marks.  Registration of a trademark on the principal register of the USPTO is *prima facie* evidence of validity and establishes a presumption that the mark is protectable or distinctive. 15 U.S.C. § 1057(b); *Forman*, 509 F.3d at 1357 n.3. Moreover, because the PTO did not require proof of secondary meaning for the Edge Registered Marks (Dkts. 13-15, 13-19, 13-20, & 13-21), these marks are presumed to be inherently distinctive. *Forman*, 509 F.3d at 1357 n.3 (citing *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 & n.2 (1st Cir. 2006)).   In addition, the marks THE EDGE SYSTEM and HYDROPEEL have become incontestable, which serves as conclusive evidence of Edge's right to use the marks subject to certain defenses. *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1208 (11th Cir. 1999) (citing 15 U.S.C. § 1115(b)).

Defendant alleges that the Edge Registered Marks were "wrongfully issued by the USPTO." (*See* Dkt. 128 at 14.)  Aside from conclusory statements regarding invalidity of the Edge Registered Marks and recycled arguments made during prosecution of the Edge Registered Trademarks, Defendant does not present ***any*** evidence that the Edge Registered Marks were wrongfully issued.  (*See* Dkt. 128 at 14-15, 24-25); *see also* Razai Decl, Ex. 3, Response to Interrogatory No. 5.

Defendant next alleges that Edge has abandoned the incontestable mark THE EDGE SYSTEM because it has "sold no devices with the name of 'Edge System'" for more than five years, but fails to submit any evidence to support this allegation.   (*See* Dkt. 128 at 15.) Defendant bears a strict burden of proving abandonment by a preponderance of the evidence. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1176 (11th Cir. 2002). Defendant must prove both that Plaintiff Edge has ceased using the THE EDGE SYSTEM mark, and that Edge "has done so with an intent not to resume its use." *See id.* at 1173-74 (citing 15 U.S.C. § 1127).   Edge has never intended and does not intend to stop using its registered mark THE EDGE SYSTEM.  Cohen Decl., ¶¶3-4.  Defendant has not submitted ***any*** evidence to prove cessation of use of the THE EDGE SYSTEMS mark, or to prove intent not to resume use.  Thus, Defendant has not carried its burden of proving abandonment by a preponderance of the evidence.  *See id.* at 1176.

As there is no genuine issue of material fact, Plaintiffs respectfully request that the Court grant summary judgment that the Edge Registered Marks THE EDGE SYSTEM, VORTEX-FUSION, and HYDROPEEL are not invalid.

## C.   Defendant Has Infringed Edge's Registered Trademarks and Common Law Marks and Falsely Designated the Origin of his Goods

To prevail on its trademark infringement claim, Edge must prove: (1) that it owns a valid and protectable mark; and (2) that Defendant's unauthorized use of it is likely to cause confusion. 15 U.S.C. §§ 1114(1)(a) & 1125(a); *see Nane Jan, LLC v. Seasalt and Pepper, LLC*, No. 2:14-cv-208-FtM-29CM, 2014 WL 5177655, at *2 (M .D. Fla. Oct. 14, 2014) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007))[5]  Moreover, under 15 U.S.C. § 1125(a), it is an act of unfair competition to use in interstate commerce any "word, term, name, symbol or device, ... or any false designation of origin ... which is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir. 2010) (citing 15 U.S.C. § 1125(a)).   The use of a common law mark by another constitutes a

---

[5] The analysis for likelihood of success for Florida common law claims of trademark infringement is the same as the analysis for federal trademark infringement.  *See Nane Jan*, 2014 WL 5177655, at *2 n.3 (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)).

false designation of origin if the use is likely to confuse customers about the source of the products. *Tana*, 611 F.3d 767, 772-73

     As there is no genuine issue of material fact that the Defendant's use of the Edge Marks is likely to confuse customers about the source of his products, the Court should grant summary judgment that the Defendant infringes Edge's Marks and falsely designates the origin of his goods under 15 U.S.C. § 1125(a) and infringes Edge's registered trademarks under 15 U.S.C. § 1114.

    **1.**    **<u>Likelihood of Confusion</u>**

     The second prong of the analysis for trademark infringement under § 1114 as well as trademark infringement and false designation of origin under § 1125(a) is whether Defendant's use of the marks is likely to confuse customers about the source of the products. *Nane Jan*, 2014 WL 5177655, at *2 (citing *Custom Mfg.*, 508 F.3d at 647-48); *Tana v. Dantanna's*, 611 F.3d 767, 772-73 (11th Cir. 2010) (citing 15 U.S.C. § 1125(a)). The Eleventh Circuit considers the following factors in determining whether a likelihood of confusion exists: (1) the strength of the asserted mark, (2) the similarity between the asserted mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1220 (11th Cir. 2008) (internal citation omitted).

     Because the inquiry is case-specific, the court is not required to consider every factor, but only those that are relevant to the case at hand. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 840 & n.17 (11th Cir. 1983). The determination does not require that a majority of the factors favor confusion, if the overall circumstances tend to establish confusion. *Id.*; *see also AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986) ("likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists. . . . The appropriate weight to be given to each of these factors varies with the circumstances of the case.")

     Here, the is no issue of material fact and the Court should grant summary judgment that the Defendant infringes the Edge Marks and falsely designates the origin of his goods under 15 U.S.C. § 1125(a) and infringes Edge's registered trademarks under 15 U.S.C. § 1114 because an

analysis of the mandated factors establish that Defendant's use of the Edge Marks will confuse the consuming public.

### a.      Type And Strength Of The Asserted Marks

"There are four recognized types of mark, ranging from weakest to strongest: generic, descriptive, suggestive and arbitrary. The stronger the mark, the greater the scope of protection accorded it." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 (11th Cir. 2010) (quoting *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1240 (11th Cir. 2008)).

Here, the marks THE EDGE SYSTEM, EDGE SYSTEMS, and the Chevron "E" Logo are all *arbitrary*.  The word "Edge," the distinguishing element of these marks, bears no relationship to the hydradermabrasion therapy products being marked.  *See, e.g.*, *Frehling*, 192 F.3d 1330, 1335-36 (11th Cir. Fla. 1999) ("e.g., 'Sun Bank' is arbitrary when applied to banking services.") (citation omitted).  Arbitrary marks are the strongest marks.  *Id.*  Thus, these marks are inherently distinctive and extremely strong.

The marks ANTIOX+, ANTIOX-6, ACTIV-4, BETA-HD, GLYSAL, DERMABUILDER, HYDROPEEL and VORTEX-FUSION require an effort of imagination by the consumer to understand how these phrases are describing the product and are, thus, *suggestive*.  *See AmBrit,* 812 F.2d at 1537 n. 20 (11th Cir.1986).  These marks are also inherently distinctive and very strong.

Edge's longtime use, significant advertising expenditures, and large volume of sales have further strengthened the trademarks.  *See Home & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1260 (M.D. Fla. 2009) (*citing John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 n. 13 (11th Cir. 1983)).  Edge has been using its trademarks for years, including operating its business under the trade name EDGE SYSTEMS since 1997.  (S*ee* Dkt. 13-04, ¶¶3-4.)  Edge has spent over $5.6 million in the past five years alone advertising its products in with the Edge Marks.  Cohen Decl., ¶5.  In that five-year span, Edge's efforts have resulted in over $125 million in total sales.  *Id.*, ¶7.  Edge has used its extensive marketing efforts and sales force to place products in over 2,700 locations throughout each of the 50 states.  (*Id.*, ¶6.)  Additionally, national media attention has further reinforced the consuming public's association between Edge and its trademarks and has established significant goodwill and brand recognition with the consuming public.  (Dkt. 13-4, ¶¶12, 15.)

The Edge Marks are strong and, thus, this factor weighs strongly in favor of Edge.

   **b.**  <u>**Similarity Of The Marks**</u>

   In determining the similarity of the marks, the court compares the marks and considers "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling*, 192 F.3d at 1337 (internal citation omitted).

   The defining characteristics of Edge's Chevron "E" Logo are the three white triangles that form an "E" on a blue square and the word EDGE in the bottom right corner. Defendant's mark is essentially ***identical***.



*CHEVRON E-LOGO*



*INFRINGING MARK*

   Likewise, as shown in the table below, Defendant is using numerous word marks that are ***identical*** to the Edge Marks, with a few marks that are ***nearly identical*** to the Edge Marks.

| <u>**EDGE'S MARKS**</u> | <u>**DEFENDANT'S INFRINGING MARKS**</u> |
|---|---|
| THE EDGE SYSTEM® / EDGE SYSTEMS | EDGE SYSTEMS |
| HYDROPEEL® | HYDRAPEEL |
| ACTIV-4 | ACTIV-4 |
| ANTIOX+ | ANTIOX-PLUS |
| ANTIOX-6 | ANTIOX-6 |
| BETA-HD | BETA-HD |
| DERMABUILDER | DERMABUILDER |
| GLYSAL | GLYSAL |
| VORTEX-FUSION® | CYCLONIC FUSION |

   Defendant uses the word mark "HYDRAPEEL," which is nearly identical to Edge's mark "HYDROPEEL." Both marks look and sound substantially the same and leave the consumer with the same overall commercial impression because the words "hydra" and "hydro" are nearly identical. Likewise, Defendant uses the mark "ANTIOX-PLUS."

   Defendant's mark CYCLONIC-FUSION is substantially similar to Edge's mark VORTEX-FUSION. The only difference between the marks is the substitution of the word CYCLONIC for VORTEX, two words which have essentially the same meaning with respect to the products, again leaving the consumer with the same commercial impression.

   Because Defendant's marks are identical, if not nearly identical, this factor weighs heavily in favor of Edge.

c.      **Similarity Between The Products**

Defendant's advertised product is identical to the Edge's products.  Like Edge, Defendant sells the same serums and solutions for use with its knock-off products.  (Dkt. 13-16, at 1; Dkt. 13-17, at 1.)  Because the products offered by Edge and Defendant are the ***exact same products***, this factor weighs heavily in favor of Edge.

d.      **Similarity Of The Sales And Advertising Methods**

A high degree of similarity between sales methods and use of the same advertising media increases the likelihood of confusion.  *Suzuki Motor Co. v. Jiujiang Hison Motor Boat Mfg. Co.*, No. 1:12-cv-20626, 2012 WL 640700, at *3 (S.D. Fla. Feb. 27, 2012).  Here, both Edge and Defendant use a sales force and the Internet to market their products.  *See id.*  Defendant's websites include nearly identical information and graphics to Edge's website, along with use of the Edge Marks.  (Dkt. 13-15, ¶13; Dkt. 13-17; Dkt. 13-04, ¶23.)  Defendant's sales force and headquarters identify themselves as being affiliated with Edge and piggy-back on Edge's extensive advertising and marketing efforts.  (Dkt. 13-02, ¶3; Dkt. 13-03, ¶5.) This factor also weighs strongly in Edge's favor.  *See id.* (factor favored plaintiff when both plaintiff and defendant used Internet and defendant's Internet presence included use of plaintiff's marks).

e.      **Defendant's Intent**

The evidence of Defendant's intent to deceive customers is overwhelming.  "If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity."  *Frehling*, 192 F.3d at 1340.  Defendant uses Edge's name and logo, welcomes callers with "Welcome to Edge," identifies its sales force as affiliated with "Edge Systems," all to sell a direct copy of the Edge Machine.  (Dkt. 13-02, ¶3; Dkt. 13-03, ¶5.) Defendant has even filed a trademark application for Edge's trade name and Chevron "E" Logo. Razai Decl., Ex. 1.  Defendant's copying of Edge's trade name, trademarks, and trade dress raises an inference that Defendant intended to benefit from Edge's reputation to Edge's detriment. *See Playboy Enterprises, Inc. v. P.K. Sorren Export Co. Inc. of Fl*, 546 F. Supp. 987, 996 (S.D. Fla. 1982).  The only possible conclusion is that Defendant has intentionally misappropriated the Edge Marks to derive a benefit from Edge's reputation and goodwill.  This factor weighs strongly in Edge's favor.

-14-

f.      **Actual Confusion**

Although not required for a finding of likelihood of confusion, evidence that use of the accused marks has already led to confusion is persuasive evidence that future confusion is likely. *Frehling*, 192 F.3d at 1340 ("It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion.") (internal citation omitted); *AmBrit*, 812 F.2d at 1543 ("Actual consumer confusion is the best evidence of likelihood of confusion.").   Consumers have been fooled by Defendant's use of the Edge Marks.   The Court found that Plaintiffs made a sufficient showing of actual confusion at the outset of the case.  (Dkt. 81 at 14–15).

While Defendant only operated the infringing websites for a very short time, Edge has encountered numerous instances of actual confusion.  Defendant has tricked multiple customers into purchasing his knock-off product.  After purchasing the Defendant's knock-off, a customer looked to Edge for training and certification, thinking she had purchased an authentic product. (Dkt. 13-28).  Another customer believed that Defendant's Website was affiliated with Edge and that the knock-off product advertised on the site was, in fact, an Edge product.  (Dkt. 13-3, ¶5.) Defendant's receptionist answered her call with "Welcome to Edge Systems."  (*Id.*)  Defendant's Regional Sales Manager represented himself to be Edge's Regional Sales Manager in email and on the phone.  (*Id.*, ¶¶6,7.) When she asked why the knock-off product was called "HydraDerm" and not "HydraFacial," Defendant's Sales Manager responded that the HydraDerm is Edge's newest version of the Edge Machine.  (*Id.*, ¶7.)  Defendant's conduct all led to the conclusion that Defendant was, in fact, Edge.  The customer learned that neither Defendant nor his knock-off products were affiliated with Edge after being informed by a real Edge employee.  (*Id.*, ¶9.) Plaintiffs have presented additional third-party witness testimony establishing that Defendant's use of the Edge Marks has already caused actual confusion in the marketplace.  *See*, *e.g.*, Dkt. 13-28, at 1-3; Dkt. No. 55 at 137:6–14.

There is no issue of material fact that there is a likelihood of confusion between the Edge Marks and Defendant's use of the marks.

2.      **Defendant Does Not Dispute That There is a Likelihood of Confusion**

Defendant does not dispute whether there is a likelihood of confusion between Edge's trademarks and Defendant's use of these marks. Material Fact Nos. 23-24.   Defendant acknowledged at the December 19, 2014 hearing on Plaintiffs' motion for preliminary injunction that he did not dispute that there was a likelihood of confusion.

**COURT:** "So Mr. Aguila, my sense is that you're not really disputing the notion of confusion.  You're not disputing the fact that you are operating a business that has essentially the same name as the Plaintiff's business, at least some of it, the Edge Systems.  You have a website, has a hyphen between Edge and Systems, but to most people they wouldn't notice any difference.  That your product has a same or similar names, depending on the marks that are at issue.  That's a little variation.

If I'm right, your dispute is really that while they're the same or similar, that you have the right to do it because you have a prior use.  Your use of these marks and the product that's patented precedes the Plaintiff's and therefore you're entitled to do what you're doing.  Am I reading your papers correctly?"

**AGUILA:** "Your Honor, that would be a correct summary."

(Dkt. 55 at 10:19–11:10.)

Indeed, by attempting to assert his fraudulently-obtained marks for ACTIV-4, ANTIOX-6, BETA-HD, and DERMABUILDER against Edge in the SAAC, Defendant has admitted that his marks are "likely to cause confusion" with the four identical common law marks owned and used by Edge. (Dkt. 135 at 64, ¶137). *See FN Herstal*, 2015 WL 195918, at *7 n.93; *Andrews v. Metro N. C.R. Co.*, 882 F.2d 705, at 707 (2nd Cir. Conn. 1989). Of the eight documents Defendant has produced in this matter, none dispute that a likelihood of confusion exists between the four Edge common law marks and Defendant's fraudulently obtained marks.

Because there are no genuine issues of material fact that there is a likelihood of confusion between the Edge Marks and Defendant's use of the marks, the Court should grant summary judgment that the Defendant has infringed the EDGE SYSTEMS trade name, the Chevron "E" Logo, the common law marks ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, GLYSAL, and DERMABUILDER, and Edge's registered marks THE EDGE SYSTEM, VORTEX-FUSION, and HYDROPEEL and falsely designated the origin of his goods under 15 U.S.C. § 1125(a) and infringed Edge's registered marks THE EDGE SYSTEM, VORTEX-FUSION, and HYDROPEEL under 15 U.S.C. § 1114.

## IV.  THE COURT SHOULD GRANT SUMMARY JUDMGENT THAT U.S. PATENT NO. 6,299,620 IS INFRINGED AND NOT INVALID

**A.    The Court Should Grant Summary Judgment that the '620 Patent is Infringed**

### 1.    U.S. Patent No. 6,299,620

U.S. Patent No. 6,299,620 ("the '620 Patent") claims various embodiments of a system that can be used to remove skin surface layers to cause the growth of new skin layers.  (Dkts. 1-4, at 1:16-18).  Claim 1 of the '620 Patent recites:

> *A system for treating surface layers of a patient's skin, comprising:*
>
> *(a) an instrument body with a distal working end for engaging a skin surface;*
>
> *(b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto;*
>
> *(c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and,*
>
> *(d) at least one outflow aperture in said skin interface in communication with a negative pressurization source.*

(Dkt. 1-4, at Claim 1)

### 2.    Defendant's Accused Product

In October of 2014, Edge learned that Defendant was offering a copycat version of the Edge Machine on Defendant's Lumenis Website, then later on Defendant's Websites.  Material Fact No. 35.  Defendant's copycat product was advertised, interchangeably, as the HydraDerm, the HydraDerm MD, the Hydradermabrasion, and the Hydradermabrasion MD ("the Accused Product").  Material Fact No. 36.




*EDGE HYDRAFACIAL® PRODUCT*        *DEFENDANT'S KNOCK-OFF*

Plaintiffs later learned that two separate customers, Lealani Irby and Dr. Elliott Duboys, had each purchased a knock-off machine from the Defendant, each believing that they had purchased

Edge's authentic Hydrafacial® product.   Material Fact Nos. 37, 38.   Photographs of the handpieces purchased by Ms. Irby and Dr. Duboys, respectively, are shown below:




*HANDPIECE FROM IRBY MACHINE ("IRBY HANDPIECE")*




*HANDPIECE FROM DUBOYS MACHINE ("DUBOYS HANDPIECE")*

    **3.**    <u>**Legal Standard**</u>

Selling a patented invention within the United States during the term of the patent without authorization constitutes infringement of that patent.   35 U.S.C. § 271(a).   Determining whether an accused device infringes a patent requires a two-step analysis.   First, the court determines the scope and meaning of the patent claims as a matter of law.   *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).   Second, the court compares the construed claims to the accused device.   *Id*.

Plaintiffs apply the plain and ordinary meaning of the language in the claims.   *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).   Applying the plain and ordinary meaning of the language to the claims, Defendant's Accused Product meets every limitation of Claims 1 of the '620 Patent, and thus infringes the '620 Patent, regardless of whether it is used in connection with the Irby Handpiece or the Duboys Handpiece.   *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). The chart below demonstrates how the Accused Product meet every limitation of Claims 1 of the '620 Patent.

| Claim Language | Analysis |
|---|---|
| Preamble: A system for treating surface layers of a patient's skin, comprising: | Defendant's Accused Product is a system for treating the skin surface layers of a patient.  *See* Expert Report of Gary L. Loomis ("Loomis Expert Report"), Razai Decl., Ex. 9, at 17. Defendant's Website states that the Accused Product "is considered to be the next generation in microdermabrasion technology – due to the simultaneous dermal infusion of medicinal products and crystal free exfoliation.  Hydradermabrasion is mainly used for skin revitalization, pigmentation treatments, and scar reduction." (Defendant's Website, Dkt. 50-32 at 3, Dkt. 50-33 at 3) |
| (a)  an instrument body with a distal working end for engaging a skin surface; | The Accused Product has an instrument body with a distal working end for engaging a skin surface.  *See* Expert Report of Gary L. Loomis, Razai Decl., Ex. 9 at 17.  As shown in the photographs below, the Accused Product includes a handheld device that has a body and a distal working for engaging a skin surface.  This is true for both the Irby Handpiece and the Duboys Handpiece. <br><br>Irby Handpiece          Duboys Handpiece<br> |
| (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto; | The distal working end of the Accused Product includes a skin interface portion of the working end that has an abrading fragment secured to it.  *See* Loomis Expert Report, Razai Decl., Ex. 9 at 19.<br><br>Defendant's Website states: "One of the handpieces used by the HydraDerm combines the highest quality diamond-assisted microdermabrasion, with the simultaneous delivery of potent topical serums past the epidermis – and down into the dermis. This HydraPeel™ handpiece contains *a diamond-treatment head*, which removes the upper-most portion of the epidermis, also called the *stratum corneum*. The skin is pulled into the lumen of the handpiece, thereby stretching it tightly so as *to better allow the special diamond-encrusted tip to properly exfoliate*." (Defendant's Website, Dkt. 50-32 at 6, Dkt. 50-33 at 6.)  Defendant's Website also depicts a chart that lists the features of the Hydradermabrasion MD, including the "[a]pplication of liquid with a diamond-tip." (*See* Loomis Expert Report, Razai Decl., Ex. 9 at 19.)<br><br>Irby Handpiece<br>The distal end of the Irby Handpiece includes an abrading fragment that is secured to it.  (*Id.*, at 19.) This abrading structure is the "diamond-treated head" that is described on Defendant's Website and depicted in |

<table>
<tr><td></td><td>

the below photograph of the Irby Handpiece. (*Id.*)



This abrading structure has sharp edges that can abrade and exfoliate the patient's skin. (*Id.*).

Duboys Handpiece
Dr. Duboys machine can be used with a tip that contains a diamond-treatment head, which removes the upper-most portion of the epidermis, also called the *stratum corneum*. (*Id.* at 20.). This abrading structure can abrade and exfoliate the patient's skin. (*Id.*)



In fact, as shown in the left photograph, the Duboys handpiece includes tips with abrading structures for abrading tissue. *See* Loomis Expert Report; Razai Decl., Ex. 9, at 20; *see also* Razai Decl., Ex. 8. This abrading structure is the "diamond-treated head" that is described on Defendant's Website. (*Id.*, at 21.)

The Accused Product, thus, includes an abrading structure that is secured to the handpiece. This abrading structure, which is present on both the Irby Handpiece and the Duboys Handpiece, is used to abrade and exfoliate the patient's skin.

</td></tr>
<tr><td>

(c)    at    least    one inflow    aperture    in said skin interface in fluid communication with    a    fluid reservoir; and

</td><td>

The Accused Product has at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir. *See* Loomis Expert Report, Razai Decl., Ex. 9 at 22.

Irby Handpiece
Defendant's Lumenis Website states: "The Hydradermabrasion MD™ includes several different solutions and serums that could be offered to your patients. The four solutions are stored in bottles (8 fl oz/ 237 mL) that are attached to the front of the Hydradermabrasion MD™ device. These four solutions constitute the basis for a 'basic' Hydradermabrasion treatment." (Dkt. 13-18 at 6.) The Irby Handpiece has an aperture in the distal working end that is in communication with one of the four solutions or fluid sources that are attached to the front of the Accused Product. *See* Loomis Expert Report, Razai Decl., Ex. 9 at 22-23. When

</td></tr>
</table>

| | |
|---|---|
| | the distal end of the handpiece is positioned against the skin of the patient, the vacuum creates negative pressure that pulls one of the four solutions out through the tube that connects the aperture to the solution. (*Id.* at 23.)  The solution is pulled through the tube and out from the aperture, which is located in the distal working end of the handpiece. (*Id.*).

Duboys Handpiece
Defendant's Lumenis Website states: "Separately, the four serums are stored in single-use vials (0.13 fl oz / 4 mL).  The four serums are meant to be used for special treatments that would be potentially beneficial for the patient.  The serums are applied by first inserting them into special "cylonic-infusion" handpiece, where a needle that is located in the center of the handpiece penetrates the vial's sterile septum, thereby extracting the serum from the vial.  The serums are then infused into the skin with cyclonic pressure to penetrate the *stratum corneum*." (Dkt. 13-18 at 6.)



RESERVOIR FOR SINGLE-USE VIALS

The Duboys Handpiece has an aperture in the distal working end, which is in communication with the single-use vial.  *See* Loomis Expert Report, Razai Decl., Ex. 9 at 24.  The single-use vial is a fluid reservoir that is inserted into the back of the handpiece.  (*Id.*)  When the distal end of the handpiece is positioned against the skin of the patient, the vacuum creates negative pressure that pulls solution out from the single-use vial through the needle in the handpiece.  (*Id.*)  The solution is pulled through the needle and out through the aperture, which is located in the distal working end of the handpiece. (*Id.*)

The Accused Product, thus, has at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir.  This structure is present on both the Irby Handpiece and the Duboys Handpiece. |
| (d)   at   least   one outflow   aperture   in said skin interface in communication   with a   negative pressurization source. | The skin interface portion of the Accused Product also has an outflow aperture in communication with a negative pressurization source, i.e., a vacuum.

Defendant's Website states: "The pneumatic action of the ***vacuum helps pull the skin taut, while at the same time, the epidermis is bombarded by either a solution or serum*** that corresponds to your patient's skin." (emphasis added) (Defendant's Website, Dkt. 50-32 at  6, Dkt. 50-33 at 6.)   "The HydraDerm is the first medical device that uses the '4-in-1' technology of Cleansing, Exfoliation, Extraction, and Infusion."  (*Id.* at 11.) |

<u>Irby Handpiece</u>
The skin interface portion of the Irby Handpiece has a second aperture consisting of a port in communication with a vacuum source. *See* Loomis Expert Report, Razai Decl., Ex. 4 at 24. The vacuum is the negative pressurization source. (*Id.*). When the distal end of the handpiece is positioned against the skin of the patient, the vacuum creates negative pressure that pulls one of the four solutions out through the tube that connects the aperture to the solution. (*Id.* at 25.) The solution is pulled through the tube and out the aperture, which is located in the distal working end of the Irby Handpiece. (*Id.*)

<u>Duboys Handpiece</u>
The Duboys Handpiece also has an aperture in the distal working end that is in communication with a vacuum source, which is a negative pressurization source. (*Id.* at 26) When the distal end of the handpiece is positioned against the skin of the patient, the vacuum creates negative pressure that pulls solution out from the single-use vial through the needle in the handpiece. (*Id.*).

The Accused Product, thus, has at least one outflow aperture in said skin interface in communication with a negative pressurization source. (*Id.*). This structure is present in both the Irby Handpiece and the Duboys Handpiece.

Because there is no genuine issue of material fact that the Accused Product embodies each and every limitation of Claim 1 of the '620 Patent, the Court should grant summary judgment that the Accused Product infringe Claim 1 of the '620 Patent.

**B.    The Court Should Grant Summary Judgment that the '620 Patent is Not Invalid**

Every claim of an issued patent is presumed valid, 35 U.S.C. § 282, and a defendant can only overcome that legal presumption by clear and convincing evidence. *IMPAX Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008); *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1216 (Fed. Cir. 1998). As Defendant has failed to present any evidence, much less clear and convincing evidence, that the '620 Patent is invalid, the Court should grant Plaintiffs summary judgment that the '620 Patent is not invalid.

**1.    The '739 Patent Is Not Prior Art**

Defendant alleges that the '620 Patent is anticipated by U.S. Patent No. 6,241,739 ("the '739 Patent"). Material Fact No. 2. (*See* Dkt. 128 at 9, 12-13, 21). As set forth in the Expert Report of Gary Loomis, the'739 Patent does not qualify as prior art to the '620 Patent and, thus, cannot anticipate the '620 Patent. *See* Decl. Ali S. Razai, Ex. 9 at 30, ¶39. The '620 Patent was

filed with the United States Patent and Trademark Office ("USPTO") on December 30, 1999, Material Fact No. 1, while the '739 did not issued as a patent until June 5, 2001. Razai Decl., Ex. 10. Defendant does not specifically allege how the '739 Patent qualifies as prior art to the '620 Patent. However, because the '739 patent did not publish or issued prior to the filing date of the '620 patent, Defendant is presumably alleging that the '739 patent is prior art to the '620 patent under 35 U.S.C. § 102(e). Pursuant to 35 U.S.C. § 102(e):

> A person shall be entitled to a patent unless . . . the invention was described in –
> (1) an application for patent, published under section 122(b), by another filed in
> the United States *before the invention by the applicant for patent* or (2) a patent
> granted on an application for patent by another filed in the United States *before*
> *the invention by the applicant for patent* . . . .

35 U.S.C. § 102(e) (emphases added). Defendant presumably contends that the '739 patent is prior art to the asserted '620 patent because the '739 patent has a filing date of November 12, 1999, which predates the December 30, 1999 filing date of the '620 patent by about six weeks.

However, a patent reference anticipates an invention under Section 102(e) only if the reference's effective filing date is before the date of the invention of the asserted patent (i.e., the asserted patent's "invention date") by the patent applicant. *Spansion, Inc. v. ITC*, 629 F.3d 1331, 1356 (Fed. Cir. 2010). In this case, the date of invention of Claim 1 of the '620 patent predates the filing date of the '739 patent reference. Material Fact No. 4 (establishing a date of invention as least as early as September 16, 1999). In the context of a validity challenge under Section 102(e), an inventor may "swear behind" a reference in order to prove an earlier date of invention than the filing date of his or her patent. *See, e.g., Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1327 (Fed. Cir. 2002). In order to swear behind a reference, the patent owner must show that the claimed invention of the patent was conceived at an earlier date and reduced to practice with reasonable diligence. *Id.* Conception is the formation, in the mind of the inventor, of "a definite and permanent idea of the complete and operative invention . . . . The idea must be 'so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'" *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996) (citing *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228, (Fed. Cir. 1994)). By effectively swearing behind a reference, the

patent owner thereby removes that reference as prior art to the asserted patent. *See Honeywell*, 298 F.3d at 1327.

John Shadduck and James Baker, the inventors of the '620 patent, conceived and reduced to practice the claimed invention prior to the filing date of the '739 patent. Material Fact No. 4. In particular, the inventors of the '620 patent conceived and reduced to practice a system for treating surface layers of a patient's skin, comprising (a) an instrument body with a distal working end for engaging a skin surface; (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto; (c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and (d) at least one outflow aperture in said skin interface in communication with a negative pressurization source, as recited in Claim 1 of the '620 patent, as early as September 16, 1999. Material Fact No. 4. Accordingly, the '739 patent is not prior art to the '620 patent under 35 U.S.C. § 102(e) and thus cannot be used to successfully challenge the validity of the '620 patent. *Spansion*, 629 F.3d at 1356.

### 2.    The '804 Patent Does Not Anticipate Claim 1 of the '620 Patent

Defendant alleges that the '620 Patent is anticipated by U.S. Patent No. 4,378,804 ("the '804 patent"). Material Fact No. 2; (*See* Dkt. 128, at 9, 12-13, 21). "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987). The '804 Patent does not anticipate Claim 1 of the '620 Patent at least because it does not disclose "at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir," a limitation expressly recited in the asserted Claim. *See* Decl. Ali S. Razai, Ex. 9 at 32, ¶46. Defendant does not even *allege* that this limitation is disclosed by the '804 Patent, let alone show that the '804 Patent discloses this feature. *Id. See* Razai Decl. Ex. 9 at 32. Accordingly, for this reason alone, Defendant fails to meet his burden to prove that the '804 Patent anticipates the '620 Patent. *See IMPAX Labs.*, 545 F.3d at 1314.

Further, the '804 Patent fails to disclose "a skin interface portion of the working end comprising an abrasive fragment composition secured thereto," as recited in Claim 1 of the '620 Patent. *See* Decl. Ali S. Razai, Ex. 9 at 32, ¶47. *See* M.P.E.P. § 2131. Accordingly, for this additional independent reason, Defendant also fails to meet his burden to prove that the '804 Patent anticipates the '620 Patent. *See IMPAX Labs.*, 545 F.3d at 1314.

-24-

    **3.**    <u>The '431 Patent Does Not Anticipate Claim 1 of the '620 Patent</u>

    Defendant also alleges that the '620 Patent is anticipated by the U.S. Patent No. 5,037,431 ("the '431 Patent"). Material Fact No. 2. The '431 Patent does not anticipate Claim 1 of the '620 Patent at least because it does not disclose the "skin interface portion of the working end comprising an abrasive fragment composition secured thereto," a limitation expressly recited in the asserted Claim. (Dkt. 1-4, Claim 1); *See* Loomis Expert Report, Decl. Ali S. Razai, Ex. 9 at 33-34, ¶53. *See* M.P.E.P. § 2131. Again, Defendant does not even *allege* that this limitation is taught by '431 Patent, let alone show that the '431 Patent discloses this feature. (*Id.*). For this reason alone, Defendant has not satisfied his burden of proving that the '431 Patent discloses all the limitations of Claim 1 of the '620 Patent. *See IMPAX Labs.*, 545 F.3d at 1314.

**C.**    <u>Plaintiffs are Entitled to Summary Judgment that the Asserted Claims of the '591 and '620 Patents are Not Invalid Under 35 U.S.C. §§ 101, 103, or 112</u>

    Defendant also alleges, in a few conclusory and unsupported sentences, that the '620 Patent is invalid under 35 U.S.C. §§ 101, 103, 112, and 362. However, has not provided any evidence or argument to support his allegations.

    Plaintiffs are entitled to summary judgment that the '620 patent is not invalid because the Defendant has not made any plausible showing of the invalidity of the '620 Patent in his eight-document production, let alone a clear and convincing showing required to overcome the presumption of validity of the '620 Patent. *IMPAX Labs.*, 545 F.3d at 1314.

**V.**  <u>THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' FLORIDA STATE LAW CLAIMS</u>

    "[T]he same facts which would support an action for trademark infringement would also support an action for [common law] unfair competition." *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg, Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975). "[T]he analysis of the Florida statutory and common law claims of trademark infringement is the same as federal trademark infringement." *Nane Jan, LLC v. Seasalt and Pepper, LLC*, No. 2:14–cv–208–FtM–29CM, 2014 WL 5177655, at *2 n.3 (M.D. Fla. Oct. 14, 2014) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1991)). Similarly, "[e]ngaging in trademark infringement is an unfair and deceptive trade practice that constitutes a violation of the [Florida Deceptive and Unfair Trade Practices] Act." *TracFone Wireless, Inc. v. GSM Grp., Inc.*, 555 F.Supp. 2d 1331, 1338 (S.D. Fla. 2008).

Here, because summary judgment is appropriate that Defendant has infringed the Edge Marks under 15 U.S.C Sections 1114(1)(a) and 1125(a), summary judgment is also appropriate that Defendant has violated Florida's common law unfair competition laws and Florida's Deceptive and Unfair Trade Practices Act. *See Boston*, 510 F.2d at 1010; *Nane Jan*, 2014 WL 5177655 at *2 n.3; *TracFone*, 555 F. Supp. 2d at 1338.

## VI. <u>THE COURT SHOULD GRANT A PERMANENT INJUNCTION AGAINST DEFENDANT'S INFRINGING ACTIVITIES</u>

Plaintiffs are entitled to permanent injunctive relief for Defendant's infringement of the '620 Patent. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) (finding that a prevailing plaintiff in a patent infringement suit is entitled to permanent injunctive relief). Pursuant to 15 U.S.C. § 1116(a), Plaintiffs are also entitled to permanent injunctive relief against Defendant's trademark infringement. *See* 15 U.S.C. § 1116(a); *PetMed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004) (internal citations omitted) ("Under the statute, a plaintiff is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his or her claims and if the equities involved favor injunctive relief."). "Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest." *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044, at *6 (S.D. Fla. Apr. 23, 2014) (citing *eBay*, 547 U.S. at 392-93).

### A. <u>Permanent Injunctive Relief Against Defendant's Infringement of the'591 Patent is Appropriate</u>

Irreparable harm is shown by demonstrating that "remedies available at law, such as monetary damages, are inadequate to compensate for that injury," *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011) (citation omitted), including "lost sales and erosion in reputation and brand distinction." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013). There must also be a causal nexus between the alleged harm and the alleged infringement. *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).

Here, there is ample evidence of a causal nexus between the harm to Plaintiffs and Edge's infringement of the '620 Patent. Consumer demand for Defendant's product is driven by the

same patented features that drive consumer demand for Edge. (Dkt. 13-04, ¶7). A causal nexus is further evidenced by Defendant's efforts to copy every feature of Edge's business, including its name, its trademarks, and its products.

Defendant's infringement of the'620 Patent has already damaged Plaintiff's market exclusivity. *Douglas Dynamics*, 717 F.3d at 1345 ("Exclusivity. . . is an intangible asset that is part of a company's reputation.")  Defendant's offering of infringing technology damages Edge's reputation, both as an innovator, and as a provider of high quality goods.  The appearance of Edge's novel technology in Defendant's competing product makes the technology appear common and ordinary, which is a form of irreparable harm. *See id.* at 1344-45 (diminished perception by customers in the marketplace found to support irreparable harm). Further, Defendant's low-quality products has tarnished the market for Edge's patented product, as demonstrated by the complaints Edge received from purchasers of Defendant's products, which they believed to be Edge's product.  (*See* Dkts. 13-3, 41-1 & 55 at 132-56).  Finally Defendant's sales of his cheap knock-off product at one-fourth the price of Edge's product threatens to irreversibly erode the price the market will bear for Edge's microdermabrasion systems. *See, e.g., Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (recognizing loss of customer goodwill from price erosion and later effort to restore the original price); *Jaguar Imports, LLC v. Phoenix Global Ventures, Inc.*, No. 6:12-cv-1486-Orl-31KRS, 2013 WL 3491160, at *3 (M.D. Fla. July 2, 2013) (price erosion and loss of customers to low-cost infringer sufficient to establish irreparable harm).

The injury to Edge outweighs any damage to Defendant.  While Edge has shown major investments in its patented products, Defendant will suffer only minimal harm because Plaintiffs only seek to enjoin Defendant from infringing the '620 Patent. *Suzuki Motor Co. v. Jiujiang Hison Motor Boat Mfg. Co.*, No. 1:12-cv-20626, 2012 W L 640700 (S.D. Fla. Feb. 27, 2012). Further, Defendant's only evidence of his irreparable harm is his uncorroborated testimony that he will not be able to sell his already dwindling stock of infringing machines and that he derives an income of $20,000 a year from sales of his infringing machines. (*See* Dkt.  55 at 325:13-326:9, 338, 340-341).

Finally, the public interest would be advanced by a permanent injunction on sale of Defendant's infringing products. The Federal Circuit has long acknowledged the importance of the patent system in encouraging innovation. Indeed, the "encouragement of investment-based

risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) (citation omitted). It would undermine the fundamental purpose of the patent system to permit Defendant to continue infringing the '620 patent. This not only harms Edge, it harms the public as well, as demonstrated by the complaints Edge has received from the customers Defendant has duped with his cheap knock-off. (*See* Dkt. 13-3; Dkt. 41-1; Dkt. 55 at 132-56).

For the reasons mentioned above, this Court should grant Edge's motion and permanently enjoin Defendant from further infringement of the '620 Patent through the sale of his Accused Product.

**B.      Permanent Injunctive Relief Against Defendant's use of Edge's Marks is Appropriate**

A sufficiently strong showing of likelihood of confusion may by itself constitute a showing of irreparable harm. *See Under Armour*, 2014 WL 1652044, at *6 (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). Here, Plaintiffs have made a strong showing—and Defendant does not dispute—that there is a high likelihood of confusion if both parties continue to use the Edge Marks in commerce. Accordingly, Edge will be irreparably harmed absent a permanent injunction.

Similarly, Edge has no adequate remedy at law where it cannot control the quality of what appears to be its products in the marketplace. *Under Armour*, 2014 WL 1652044, at *6 "An award of money damages alone will not cure the injury to [Edge's] reputation and goodwill that will result if [Defendant's] infringing . . . actions are allowed to continue." *Id.*

Next, the balance of hardships favors Plaintiffs because Edge faces hardship from the loss of sales and its inability to control its reputation in the marketplace, whereas Defendant faces no hardship if it is prohibited from the infringement of the Edge's Marks, which is an illegal act. *Id.*

Finally, the public interest supports the issuance of a permanent injunction in order to prevent consumers from being misled by Defendant's products in the marketplace. *Id.* (citing *Nike, Inc. v. Leslie*, No. 85-960-15, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.")).

Accordingly, all four factors favor the grant of a permanent injunction against Defendants' use of the Edge Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a). As a

result, Plaintiffs are entitled to an injunction enjoining Defendants and his affiliates, officers, agents, servants, employees, attorneys and those in active concert and participation with them from the unauthorized use or employment in connection with buying, advertising, promoting, displaying, offering for sale or distributing of goods, merchandise, or services containing or having attached or having association therewith from using the Edge Marks. *See* 15 U.S.C. § 1116(a); *Babbit Elecs., Inc. v. Dynascan Corp*, 38 F.3d 1161, n.8 (11th Cir. 1994); *Jaguar Cars Ltd. v. Skandrani*, 771 F. Supp. 1178, 1185 (S.D. Fla. 1991).

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Summary Judgment for Plaintiffs and against Defendant that Edge has rights in the common law marks EDGE SYSTEMS, the Chevron "E" Logo, ANTIOX+, ANTIOX-6, ACTIV-4, BETA-HD, GLYSAL, and DERMABUILDER, that Edge's U.S. Trademark Registration Nos. 2,992,734, 3,500,086, 4,114,466 are not invalid, that Defendant has infringed Edge's common law marks EDGE SYSTEMS, the Chevron "E" Logo, ANTIOX+, ANTIOX-6, ACTIV-4, BETA-HD, GLYSAL, and DERMABUILDER, that Defendant has infringed Edge's U.S. Trademark Registration Nos. 2,992,734, 3,500,086, 4,114,466, that Defendant has falsely designated the origin of his goods, that Defendant has infringed U.S. Patent No. 6,299,620, that U.S. Patent No. 6,299,620 is not invalid, that Defendant has violated Florida's common law unfair competition laws and Florida's Deceptive and Unfair Trade Practices Act.  Plaintiffs also respectfully request that the Court grant Plaintiffs a permanent injunction against Defendant's further infringement of the Edge Marks and U.S. Patent No. 6,299,620.

## VIII.  CERTIFICATION OF GOOD FAITH CONFER

Pursuant to Local Rule 7.1(a)(3), as described in the Declaration of Ali S. Razai submitted herewith, counsel for Plaintiffs attempted to confer in good faith with Aguila regarding the relief requested in this motion and was unable to reach an agreement.

DATED:  December 4, 2015                  Respectfully submitted,

                                          **Feldman Gale, P.A.**
                                          One Biscayne Tower, Suite 3000
                                          Two South Biscayne Boulevard
                                          Miami, FL 33131
                                          Telephone No.  (305) 358-5001
                                          Facsimile No.  (305) 358-3309




                                          By: _s/ Richard Guerra_____
                                                  James A. Gale
                                                  Florida Bar No. 371726
                                                  EMail: jgale@feldmangale.com
                                                  Richard Guerra
                                                  Florida Bar No. 689521
                                                  EMail: rguerra@feldmangale.com

                                          Brenton R. Babcock (*Pro Hac Vice Admitted*)
                                          Email : brent.babcock@knobbe.com
                                          Ali S. Razai (*Pro Hac Vice Admitted*)
                                          Email:  ali.razai@knobbe.com
                                          **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                          2040 Main Street, Fourteenth Floor
                                          Irvine, CA  92614
                                          Telephone No.  (949) 760-0404
                                          Facsimile No.  (949) 760-9502

                                          *Counsel for Plaintiffs Edge Systems LLC* **and**
                                          *Axia Medsciences, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on December 4, 2015, I electronically filed the foregoing document via the Court CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*s/ Richard Guerra*
Richard Guerra

**SERVICE LIST**

*Edge Systems, LLC v. Rafael Newton Aguila*
**Case No.: 1:14-cv-24517-KMM/McAliley**
**United States District Court, Southern District of Florida**

Rafael Newton Aguila
*Pro Se* Defendant
Email: raguila@gmail.com
11 Weittenauer Strasse
Rottenbeurg Am Neckar 72108
Germany
Telephone No. 49 7472 941 9465

*Via International Mail/E-Mail*