**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:14-cv-24517-KMM/McAliley**

EDGE SYSTEMS, LLC,
a California limited liability company,
and AXIA MEDSCIENCES, LLC,
a Delaware limited liability company,

       Plaintiffs,

  v.

Rafael Newton Aguila, a/k/a Ralph Aguila,
an individual, d/b/a Hydradermabrasion Systems,

       Defendant.

_____/

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT AND NO INVALIDITY OF EDGE SYSTEMS' PATENTS AND TRADEMARKS AND OF VIOLATION OF FLORIDA STATE LAW CLAIMS AND REQUEST FOR PERMANENT INJUNCTION**

1.      On October 9, 2001, U.S. Patent No. 6,299,620 ("the '620 Patent"), entitled "INSTRUMENTS AND TECHNIQUES INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS," was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). The '620 Patent was filed on December 30, 1999. *See* Dkt. 1-4.

2.      Defendant alleges that the '620 Patent is anticipated by U.S. Patent Nos. 6,241,739; 4,738,804; and 5,037,431. Dkt. 128 at 9, 12-13, 21.

3.      On June 5, 2001, U.S. Patent No. 6,241,739 ("the '739 Patent"), entitled "MICRODERMABRASION DEVICE AND METHOD OF TREATING THE SKIN SURFACE," was duly and legally issued by the USPTO. Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 9.

4.      John Shadduck and James Baker, the inventors of the '620 Patent conceived and reduced to practice a system for treating surface layers of a patient's skin, comprising (a) an instrument body with a distal working end for engaging a skin surface; (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto; (c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and (d) at least one outflow aperture in said skin interface in communication with a negative pressurization source, as recited in Claim 1 of the '620 patent, as early as September 16, 1999. (Dkt. 42-01 at 2-3, ¶¶ 5-7 & Ex. 1.)

5.      Edge owns U.S. Trademark Registration No. 2,992,734 for the mark THE EDGE SYSTEM ("the '734 Registration"), which was registered in the Principal Register on September 6, 2005. *See* Dkt. 1-1. The '734 Registration has attained incontestable status because it has been registered on the Principal Registry for more than 5 years and is the subject of Declaration Filings with the USPTO under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

6.      Edge owns U.S. Trademark Registration No. 3,500,086 for the mark HYDROPEEL ("the '086 Registration"), which was registered in the Principal Register on September 9, 2008. *See* Dkt. 1-2. The '086 Registration has attained incontestable status because it has been registered on the Principal Registry for more than 5 years and is the subject of Declaration Filings with the USPTO under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

7.      Edge owns U.S. Trademark Registration No. 4,114,466 for the mark VORTEX-FUSION ("the '466 Registration"), which was registered in the Principal Register on March 20, 2014. *See* Dkt. 1-3.

8. Defendant's only legal and factual basis for claiming that it is not liable to Edge under 15 U.S.C. § 1114 for use of marks confusingly similar to Edge's '734, '086, and '466 Registrations is that he "never used the terms HydroPeel or Vortex-Infusion," and that he "has used the term 'Edge Systems' to describe one of his companies since 1996." *See* Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 5, Response to Interrogatory Nos. 2 & 13.

9. Defendant does not dispute that there is a likelihood of confusion between the '734 Registration and the trade name adopted by the Defendant EDGE SYSTEMS. *See* Dkt. 55 at pp. 13-15.

10. Defendant's only documents supporting its contention that it was using "the term 'Edge Systems' to describe one of his companies since 1996" are two invoices attached to Defendant's Amended Answer, Affirmative Defenses, and Counterclaims as Exhibits D and E. *See* Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 5, Response to Interrogatory Nos. 2, 8.

11. Edge has been continuously using the trade name EDGE SYSTEMS since 1997. *See* Dkt. 13-4 at 4, ¶¶ 3–4.

12. Edge has been continuously using the Chevron "E" logo since at least as early as 1999. *See* Dkt. 13-4 at 4–5, ¶ 5.

13. Edge has been continuously using the trademarks ACTIV-4, ANTIOX-6, and BETA-HD since at least as early as 2005. *See* Dkt. 137-1 at 2–3, ¶¶ 3–4, 13–15; Dkt. 137-2, 137-3, 137-4.

14. Edge has been continuously using the trademark DERMABUILDER since at least as early as 2009. *See* Dkt. 137-1 at pp. 2–3, ¶¶ 3–4, 20; Dkt. 137-9.

15. Edge has been continuously using the trademark GLYSAL since at least as early as 2010. *See* Dkt. 13-4 at 3, ¶ 6.

16. Edge has been continuously using the trademark ANTIOX+ since at least as early as 2014. *See* Dkt. 142-1 at 1, ¶5.

17. Aguila's only legal and factual basis for claiming that it is not liable to Edge under 15 U.S.C. § 1125 for use of Edge's trade name EDGE SYSTEMS, the Chevron "E" logo, and common law trademarks ACTIV-4, ANTIOX-6, BETA-HD, ANTIOX-6, DERMABUILDER, and GLYSAL is that "The Defendant used these terms before the

Plaintiffs." *See* Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 5, Response to Interrogatory Nos. 3, 5, 6, 8, 9; *see also* Dkt. 35 at 13.

18. Defendant's only documents supporting its contention that it was using Edge's trade name EDGE SYSTEMS, the Chevron "E" logo, and common law trademarks ACTIV-4, ANTIOX-6, BETA-HD, ANTIOX-6, DERMABUILDER, and GLYSAL before Edge are two invoices attached to Defendant's Amended Answer, Affirmative Defenses, and Counterclaims as Exhibits D and E. *See* Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 5, Response to Interrogatory No. 3.

19. Defendant filed a motion to amend its pleadings, wherein Defendant's proposed amended pleadings included a counterclaim seeking an injunction against Plaintiff's for the use of the trade name EDGE SYSTEMS, the Chevron "E" logo, and the common law trademarks ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, DERMABUILDER, and GLYSAL. The Court denied Defendant's motion. *See* Dkt. 135 at 54, Ex. A, Count IX, ¶ 96; *see also* Dkt. 154.

20. Defendant filed a motion to amend its pleadings, wherein Defendant's proposed amended pleadings alleged infringement of his trademark registrations for the marks ACTIV-4, ANTIOX-6, BETA-HD, and DERMABUILDER. The Court denied Defendant's motion. *See* Dkt. 135 at 64, ¶¶ 133-134; *see also* Dkt. 154.

21. The Court, in rejecting Defendant's SAAC noted: "Further, the absence of any specific factual pleadings with respect to the proposed counter-defendants gives rise to an inference of bad faith on Defendant's part. Defendant relies on four trademark registrations he obtained over Plaintiffs' marks using Plaintiffs' images as the basis for his amended counterclaims as well as potentially fraudulent documents in support of those trademarks. Defendant's proposed amendment not only exhibits bad faith, but also appears to demonstrate a continuous disregard for the judicial process which threatens the integrity of the judicial system." *See* Dkt. 154.

22. Defendant does not dispute that the trade name EDGE SYSTEMS and the Chevron "E" logo are inherently distinctive. *See* Dkt. 135 at 54, ¶ 96; *see also* Dkt. 81 at 17-18 *adopted by* Dkt. 89. ("Defendant does not dispute that these common law marks are inherently distinctive or have acquired secondary meaning.").

23. Defendant does not dispute that the common law trademarks ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, DERMABUILDER, and GLYSAL are inherently distinctive.  *See*  Dkt. 135 at 54, ¶ 96; *see also* Dkt. 81 at 17-18.

24. Defendant does not dispute whether there is a likelihood of confusion between Edge's trade name EDGE SYSTEMS and the trade name adopted by Defendant, EDGE SYSTEMS and between Edge's Chevron "E" logo and the logo adopted by Defendant.  *See* Dkt. 135 at 54, ¶ 96; *see also* Dkt. 55 at 10:19–11:10; Dkt. 81.

25. Defendant does not dispute whether there is a likelihood of confusion between Edge's common law trademarks ACTIV-4, ANTIOX-6, BETA-HD, ANTIOX-6, DERMABUILDER, and GLYSAL, and Defendant's use of these marks.  *See* Dkt. 135, 54, ¶ 96; *see also* Dkt. 55 at 10:19–11:10; Dkt. 81 at 16.

26. Defendant fraudulently applied for and obtained a Federal trademark registration for the mark ACTIV-4 using an application that included modified images of Edge's Activ-4 product.  *See* Dkt. 137-27.

27. Defendant fraudulently applied for and obtained a Federal trademark registration from the mark ANTIOX-6 using an application that included modified images of Edge's Antiox-6 product.  *See* Dkt. 137-28.

28. Defendant fraudulently applied for and obtained a Federal trademark registration from the mark BETA-HD using an application that included modified images of Edge's Beta-HD product.  *See* Dkt. 137-29.

29. Defendant fraudulently applied for and obtained a Federal trademark registration from the mark DERMABUILDER using an application that included modified images of Edge's DermaBuilder product.  *See* Dkt. 137-30.

30. Defendant's "Exhibit C" purports to be an invoice from 2010 selling a "Hydradermabrasion system."  *See* Dkt. 128 at 41.

31. Defendant's "Exhibit D" purports to be an invoice from 1996 selling the HydraDerm machine.  *See* Dkt. 128 at 42.

32. Defendant claims to have developed the HydraDerm in 2004, and stated that the HydraDerm M.D. "would come later."  *See* Dkt. 55 at 312:16–25.

33. Defendant's "Exhibit E" purports to be an invoice from January 9, 2004 selling the HydraDerm M.D. machine. *See* Dkt. 128 at 43.

34. The Court has found that it "is unconvinced that [Exhibits D and E] are authentic. Prior testimony by the Defendant and the Report and Recommendation issued by Judge McAliley only highlight the Court's grave concerns over Defendant's willingness to manufacture evidence and abuse the judicial process. Clear and convincing evidence has been presented that Defendant knowingly advanced a document of questionable authenticity and relied upon it in Defendant's pleadings." *See* Dkt. 158 at 13; *See also* Dkt. 81 at p. 21. ("There is nothing inherent about [Exhibits D and E] to suggest that they are authentic.").

35. In October of 2014, Edge was surprised to learn that one of its main competitors, Lumenis, was offering a copycat version of Edge's HydraFacial MD® hydradermabrasion system ("HydraFacial MD") on the website www.hydradermabrasion.com. Edge and Lumenis both discovered that the website was actually registered to Defendant. Defendant was apparently using Lumenis' trade name and trademarks to advertise a knock-off HydraFacial MD. *See* Dkt. 13-4 at p. 5.

36. Defendant's copycat product was advertised, interchangeably, as the HydraDerm, the HydraDerm MD, the Hydradermabrasion, and the Hydradermabrasion MD. *See* Dkt. No. 40-14, at 1-2, 6, 11-13; Dkt. No. 40-20, at 1-2, 6, 11-13.

37. On or about August 15, 2014, Lealani Irby purchased a product she believed to be Edge's HydraFacial MD from Defendant for $6,000. Ms. Irby approached Edge seeking training and certification for what she believed was an authentic Edge Product. After finding out that the product she purchased was a knock-off product, she did not feel comfortable using the product she purchased. *See* Dkt. 13-28.

38. On or about November 11, 2014, Dr. Elliot Duboys purchased a product he believed to be Edge's HydraFacial MD from Defendant for $7,650. When Dr. Duboys expressed concern about the HydraDerm name on photos of the product featured on Defendant's ecommerce account, he was told that it was the newest machine from Edge Systems. *See* Dkt. 50-16, at 16; Dkt. 55 at 132-37.

39. Defendant's Website states that the "HydraPeelTM handpiece contains a diamond-treatment head, which removes the upper-most portion of the epidermis, also called the *stratum corneum*." *See* Declaration of Ali S. Razai in Support of Motion for Summary Judgment, Ex. 9 at 21.

DATED:  December 4, 2015                    Respectfully submitted,

**Feldman Gale, P.A.**
One Biscayne Tower, Suite 3000
Two South Biscayne Boulevard
Miami, FL 33131
Telephone No.  (305) 358-5001
Facsimile No.  (305) 358-3309


By: *s/ Richard Guerra*
    James A. Gale
    Florida Bar No. 371726
    EMail: jgale@feldmangale.com
    Richard Guerra
    Florida Bar No. 689521
    EMail: rguerra@feldmangale.com

Brenton R. Babcock (*Pro Hac Vice Admitted*)
Email : brent.babcock@knobbe.com
Ali S. Razai (*Pro Hac Vice Admitted*)
Email:  ali.razai@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone No.  (949) 760-0404
Facsimile No.  (949) 760-9502

*Counsel for Plaintiffs Edge Systems LLC* **and** *Axia Medsciences, LLC*

-7-

**CERTIFICATE OF SERVICE**

I HEREBY certify that on December 4, 2015, I electronically filed the foregoing document via the Court CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

*s/ Richard Guerra*
Richard Guerra

-8-

# SERVICE LIST
*Edge Systems, LLC v. Rafael Newton Aguila*
Case No.: 1:14-cv-24517-KMM/McAliley
United States District Court, Southern District of Florida

Rafael Newton Aguila
*Pro Se* Defendant
Email: raguila@gmail.com
11 Weittenauer Strasse
Rottenbeurg Am Neckar 72108
Germany
Telephone No. 49 7472 941 9465

*Via International Mail/E-Mail*