UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:14-cv-24517-KMM/MCALILEY

EDGE SYSTEMS, *et al.*,
    Plaintiffs,

v.

Rafael Newton Aguila,
    Defendant.
_____/

FILED by ⧖ D.C.
DEC 04 2015
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 37, Defendant Rafael Aguila, *pro se*, ("Defendant") hereby moves this Court for summary judgment for non-infringement of the patents-in-suit, pursuant to Federal Rule of Civil Procedure 56. This motion is based on this memorandum of points and authorities, the declaration filed by the Defendant Rafael Aguila, the statement of uncontroverted facts and conclusions of law, and the pleadings previously filed in this action.

## I.   STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. *See id.; Taylor v. List*, 880 F. 2d 1040, 1045 (9th Cir. 1989). The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's

1
Defendant's Motion For Summary Judgment -- 14-cv-24517-KMM

assertion of fact as required by Rule 56(c). See Fed. R. Civ. P. 56(e). The responding party cannot point to mere allegations or denials contained in the pleadings. It is not enough for the non-moving party to produce a mere "scintilla" of evidence. *Celotex Corp.*, at 252. Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. *See KRL v. Moore*, 384 F. 3d 1105, 1110 (9th Cir. 2004).

## II.   ARGUMENT

Aguila does not infringe, and has not infringed, literally or under the doctrine of equivalents; Aguila does not infringe, and has not infringed, directly, indirectly, jointly, or contributorily; Aguila does not induce, and has not induced, infringement. As noted above, the limitation of Claim 1 of the '620 patent requiring "a skin interface portion of the working end comprising an abrasive fragment composition secured thereto" means that the actual handpiece used by the Plaitniffs is different from what is mentioned in Claim 1 of the '620 patent. Instead of having an "abrasive fragment", the Plaintiffs' handpiece has smooth plastic tips with small ridges. Therefore, neither the Plaintiffs' nor the Aguila's handpiece meet every limitation of Claim 1 of the '620 without making any kind of claim construction analysis; (2) construing Plaitniffs' handpiece to contain an "abrasive fragment" when it has no abrasive materials that make contact with the skin.



Aguila's handpiece



Plaintiffs' handpiece

### III. U.S. PATENT 6,299,620

Claim 1 of U.S. Patent 6,299,620 ("'620 patent") states that it is:

> A system for treating surface layers of a patient's skin, comprising: (a) an instrument body with a distal working end for engaging a skin surface; (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto; (c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and (d) at least one outflow aperture in said skin interface in communication with a negative pressurization source.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces do not have "a skin interface portion of the working end comprising an abrasive fragment composition secured thereto" as taught by the '620 patent. In fact, Aguila's handpieces do not have anything in common with any of the other subsections of found in Claim 1 of the '620 patent. For example, Aguila's handpieces that use vacuum do not have any "abrasive fragment composition" that come into contact with the skin surface.

For example, for the "wet" microdermabrasion with vacuum, Aguila would only use the plastic handpiece with the special plastic tip and no diamond or abrasive material. Similar to the Hydrafacial MD. As noted above, the limitation of Claim 1 of the '620 patent requiring "a skin interface portion of the working end comprising an abrasive fragment composition secured thereto" means that the actual handpiece used by the appellees is different from what is mentioned in Claim 1 of the '620 patent. Instead of having an "abrasive fragment", the Plaintiffs' handpiece has smooth plastic tips with small ridges. Therefore, neither the Plaintiffs' nor the Aguila's handpiece meet every limitation of Claim 1 of the '620 without making any kind of claim construction analysis; (2) construing appellees' handpiece to contain an "abrasive fragment" when it has no abrasive materials that make contact with the skin. According to the Merriam-Webster dictionary, the ordinary meaning of the term "**abrasive**" is defined as: "a substance (as emery or pumice) used for abrading, smoothing, or polishing".

### IV. U.S. PATENT 8,337,513

Claim 1 of U.S. Patent 8,337,513 ("'513 patent") states that it is:

> A system for treating skin, comprising: a handheld device comprising a main body and a working end along a distal end of the main body; an outer periphery extending along the distal end of the handheld device; at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and at least one opening along the working end of the handheld device; wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passage way, said passage way being configured to convey debris away from the working end when said vacuum source is activated; and wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces with vacuum do not have "at least one surface element comprises at least one sharp edge configured to abrade skin" as taught by the '513 patent. In fact, Aguila's handpieces with vacuum do not have anything in common with any of the other subsections of found in Claim 1 of the '513 patent. For example, Aguila's handpieces with vacuum do not have any "sharp edges" that come into contact with the skin surface.

### V. U.S. PATENT 7,678,120

Claim 1 of U.S. Patent 7,678,120 ("'120 patent") states that it is:

> A method for abrading skin of a patient, comprising: (a) placing a working end of a skin treatment device against the skin of the patient; (b) drawing the skin against an abrading surface on a skin interface on the working end of the skin treatment device by applying suction to the skin through an aspiration opening in the working end, the abrading surface comprising apexes extending upwardly from the abrading surface and the apexes having sharp edges; (c) moving the treatment device across the skin while the sharp edge of the apexes remain stationary with respect to the working end of the skin treatment device; (d) abrading the skin drawn against the sharp edge of the apexes while continuously applying suction through the aspiration

opening; and (e) removing skin debris through the aspiration opening in the working end of the skin treatment device.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces with vacuum do not have a feature that comprises "moving the treatment device across the skin while the sharp edge of the apexes remain stationary with respect to the working end of the skin treatment device" as taught by the '120 patent. In fact, Aguila's handpieces with vacuum do not have anything in common with any of the other subsections of found in Claim 1 of the '129 patent. For example, Aguila's handpieces with vacuum do not have any "sharp edges" that come into contact with the skin surface.

### VI.   U.S. PATENT 8,066,716

Claim 1 of U.S. Patent 8,066,716 ("'716 patent") states that it is:

> A system for treating a skin surface of a patient, comprising: an instrument body that comprises a main body and a working end, said working end comprising an outer periphery and a skin interface with an abrading structure, said abrading structure comprising a plurality of ridge elements, wherein said ridge elements are configured to abrade skin; and at least one aspiration opening at or near the skin interface coupled to a passageway that extends to a remote vacuum source configured to apply suction to the skin surface; wherein the outer periphery completely circumscribes the plurality of ridge elements and the at least one aspiration opening.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces with vacuum do not have a feature that comprises "an instrument body that comprises a main body and a working end, said working end comprising an outer periphery and a skin interface with an abrading structure, said abrading structure comprising a plurality of ridge elements, wherein said ridge elements are configured to abrade skin" as taught by the '716 patent. In fact, Aguila's handpieces with vacuum do not have anything in common with any of the other subsections of found in Claim 1 of the '716 patent. For example, Aguila's handpieces with vacuum do not have any "abrading structures" that come into contact with the skin surface.

## VII.   U.S. PATENT 7,789,886

Claim 1 of U.S. Patent 7,789,886 ("'886 patent") states that it is:

> A method for treating a skin surface of a patient, comprising: (a) applying against the skin surface of a patient an instrument body with a longitudinal axis and a distal working end, said distal working end comprising a working surface that carries an abrading structure comprising a plurality of sharp elements for engaging and abrading the skin surface together with a vacuum source coupled to at least one aperture about said working surface, the abrading structure and the at least one aperture positioned within a raised outer periphery that completely circumscribes the abrading structure and the at least one aperture; (b) translating the working surface over the skin surface to thereby abrade the skin surface; and (c) contemporaneously actuating the vacuum source to thereby cause suction engagement of the skin surface against the raised outer periphery and the plurality of sharp elements of the working surface and to aspirate skin debris through the at least one aperture.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces with vacuum do not have a feature or method that comprises "applying against the skin surface of a patient an instrument body with a longitudinal axis and a distal working end, said distal working end comprising a working surface that carries an abrading structure comprising a plurality of sharp elements for engaging and abrading the skin surface together with a vacuum source coupled to at least one aperture about said working surface, the abrading structure and the at least one aperture positioned within a raised outer periphery that completely circumscribes the abrading structure and the at least one aperture" as taught by the '886 patent. In fact, Aguila's handpieces with vacuum do not have anything in common with any of the other subsections of found in Claim 1 of the '886 patent. For example, Aguila's handpieces with vacuum do not have any "sharp elements" that come into contact with the skin surface.

## VIII.   U.S. PATENT 6,641,591

Claim 1 of U.S. Patent 6,641,591 ("'591 patent") states that it is:

> A system for treating the skin surface of a patient, comprising: (a) an instrument body with a distal working end that defines a skin interface portion for contacting the skin; (b) a first aperture arrangement in said skin interface consisting of at least one port in communication with a treatment media source; (c) a second aperture arrangement in said skin interface consisting of at least one port in communication with a vacuum source for removing treatment media and removed tissue from the skin interface; and (d) wherein the skin interface comprises an abrading structure with substantially sharp edges for abrading tissue.

However, Aguila's devices do not infringe on this claim because Aguila's handpieces with vacuum do not have a feature or method that comprises "wherein the skin interface comprises an abrading structure with substantially sharp edges for abrading tissue" as taught by the '591 patent. In fact, Aguila's handpieces with vacuum do not have anything in common with any of the other subsections of found in Claim 1 of the '591 patent. For example, Aguila's handpieces with vacuum do not have any "sharp edges" that come into contact with the skin surface.

## IX.   ANTICIPATION

Plaintiffs' patents are invalid because they are not novel because the exact claimed inventions were invented earlier by another person. For a patent claim to be invalid as anticipated, that prior art reference must disclose each element, either explicitly or inherently, as arranged in the claim. An inherent disclosure occurs where the element is not expressly disclosed but the practice of the prior art reference would inevitably include the element.

US Patent 6,241,739 ("the '739 patent) was filed with the USPTO on November 12, 1999, more than one month before the '620 patent was filed on December 30th, 1999. The '739 patent clearly anticipates the '620 patent, and the other patents-in-suit, by mentioning the following:

> *"FIG. 36 shows a second tube **54** mounted on the treatment tip **22**. The tube could be used to allow the metered use of chemicals to enhance the abrasion or supply or other liquids to reduce friction".*



| **Plaintiffs' '620 Patent** | **Disclosure of U.S. Patent No. 6,241,739** |
|---|---|
| <u>Preamble</u>: A system for treating surface layers of a patient's skin, comprising: | The device for microdermabrasion comprises a hollow tube with and abrasive material permanent attached to a **skin contacting end**. The abrasive coated tip is moved over the skin surface While a vacuum is applied through the tube to the skin surface to remove cells abraded from the skin surface. The vacuum also causes the skin to be held in intimate contact With the abrasive tip during the treatment procedure. |
| (a) an instrument body with a distal working end for engaging a skin surface; | This is generally accomplished by the use of a tube **having a treatment tip with an abrasive material** permanently attached thereto. The term "tube" or "tubular" used herein refers to **an elongated hollow structure** of any cross section, which includes, but is not limited to, a round, oval, square or rectangle cross section. |
| (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto; | The abrasive tip is **rubbed over the skin surface** being treated. The tube and related instrumentation also provides a vacuum collection and an optional filter system for collection of the skin cells removed by the procedure, the skin cells being aspirated through a hole or holes in the central portion of the abrasive tip. |
| (c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and | FIG. 36 shows a second tube mounted on the treatment tip. The tube could be used to allow the metered use of **chemicals** to enhance the abrasion or supply or other **liquids** to reduce friction. |
| (d) at least one outflow aperture in said skin interface in communication with a negative pressurization source. | A tubular device for performing micro-abrasion of a skin surface comprising a tubular device with a lumen there through, the tubular device having a first end with an abrasive surface and means on a second end |

| Plaintiffs' '620 Patent | Disclosure of U.S. Patent No. 6,241,739 |
|---|---|
| | thereof for attachment to a source of a vacuum to apply a **negative pressure** to a skin surface to be treated, said vacuum causing increased contact between the skin surface and the abrasive surface. |

## X. CONCLUSION

WHEREFORE, Defendant respectfully requests that the court adjudicate that it has not infringed any of the patents-in-suit of the Plaintiffs, and to declare that Plaintiffs' patents to be invalid due to the prior art of Patent 6,241,739.

## XI. CERTIFICATION OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 7.1(a)(3), the Defendant conferred in good faith with the Plaintiffs' counsel regarding the relief requested in this motion and was unable to reach an agreement.

Dated: December 4th, 2015

Respectfully submitted,

Rafael Newton Aguila, *pro se*
e-mail: raguila@gmail.com
Weittenauerstrasse 11
72108 Rottenburg am Neckar
GERMANY
Telephone: +49 7472 4303 995

## CERTIFICATE OF SERVICE

I HEREBY certify that on December 4th, 2015, I conventionally filed the foregoing document with the Clerk of the Court. I also certify that a true and correct copy of the foregoing document was served by U.S. mail on all counsel or parties of record on the Service List below.

Rafael Aguila, *pro se*

December 4th, 2015

## SERVICE LIST

James A. Gale, Esq. (FBN 371726)
Richard Guerra (FBN 689521)
**FELDMAN GALE**
One Biscayne Tower, 30th Floor
2 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 358-5001
Facsimile: (305) 358-3309


Brenton R. Babcock, Esq.
(*admitted pro hac vice*)
Ali S. Razai, Esq.
(*admitted pro hac vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiffs,*
EDGE SYSTEMS LLC and
AXIA MEDSCIENCES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-cv-24517-KMM/MCALILEY

EDGE SYSTEMS, *et al.*,
    Plaintiffs,
v.

Rafael Newton Aguila,
    Defendant.
_____/

**DECLARATION IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

I, Rafael Newton Aguila, *pro se*, declare as follows:

1. My name is Rafael Newton Aguila, I am over the age of eighteen (18) and competent to execute this Declaration, and the following statements are true and correct based on my personal knowledge or information transmitted to me from records made at or near the time of the transactions referenced therein by person(s) with personal knowledge thereof.

2. I am the Defendant in this case.

3. I have personal knowledge of the following facts, and, if called as a witness, I could and would competently testify thereto.

4. I discussed and attempted to resolve the issues raised in this motion with the opposing counsel in this case on 12-02-2015.

5. Defendant believes that it has not infringed any of the patents-in-suit of the Plaintiffs, and to declare that Plaintiffs' patents to be invalid due to the prior art of Patent 6,241,739.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 4th day of December 2015, in Miami, Florida.

Dated: December 4, 2014

Respectfully submitted,

_____
Rafael Aguila, *pro se*